IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AARON PIERCY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WHITESIDE COUNTY, Illinois; SHERIFF'S | ) | |
| DEPARTMENT OF WHITESIDE COUNTY; | ) | |
| KELLY WILHELMI, individually and in his | ) | |
| capacity as Sheriff of Whiteside County; | ) | |
| UNKNOWN WHITESIDE COUNTY | ) | |
| CORRECTIONS OFFICERS, UNKNOWN | ) | Case No. 14-cv-07398 |
| WHITESIDE COUNTY MEDICAL | ) | |
| PERSONNEL; TARRY WILLIAMS, Warden | ) | |
| of Stateville Correctional Center Northern | ) | |
| Reception and Classification Center, in his | ) | |
| individual capacity; UNKNOWN | ) | |
| ASSISTANT WARDEN OF PROGRAMS at | ) | |
| Stateville Correctional Center Northern | ) | |
| Reception and Classification Center, in his/her | ) | |
| individual capacity; ROYCE BROWN-REED, | ) | |
| administrator of the Health Care Unit at | ) | |
| Stateville Correctional Center Northern | ) | |
| Reception and Classification Center, in her | ) | |
| individual capacity; UNKNOWN | ) | |
| STATEVILLE CORRECTIONAL CENTER | ) | |
| CORRECTIONS EMPLOYEES; WEXFORD | ) | JURY TRIAL DEMANDED |
| HEALTH SOURCES, INC.; SALEH OBAISI, | ) | |
| M.D., Medical Director of Stateville | ) | |
| Correctional Center Northern Reception and | ) | |
| Classification Center, in his individual | ) | |
| capacity; L. REDMAN, R.N., Certified | ) | |
| Medical Technician S. MAYS; CRAIG | ) | |
| HOWARD, M.A.; UNKNOWN MEDICAL | ) | |
| STAFF at Stateville Correctional Center | ) | |
| Northern Reception and Classification Center, | ) | |
| | ) | |
| Defendants. | ) | |

FILED

11/12/2014

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Now comes Plaintiff AARON PIERCY, as ADMINISTRATOR of the ESTATE OF DALE PIERCY, by and through his attorneys, LOEVY & LOEVY, and complaining of Defendants WHITESIDE COUNTY, Illinois; SHERIFF'S DEPARTMENT OF WHITESIDE COUNTY; KELLY WILHELMI, individually and in his capacity as Sheriff of Whiteside County; UNKNOWN WHITESIDE COUNTY CORRECTIONS OFFICERS, UNKNOWN WHITESIDE COUNTY MEDICAL PERSONNEL; ADVANCED CORRECTIONAL HEALTHCARE, INC.; JULIE WARKIN, LPN, TARRY WILLIAMS, Warden of Stateville Correctional Center Northern Reception and Classification Center, in his individual capacity; UNKNOWN ASSISTANT WARDEN OF PROGRAMS at Stateville Correctional Center Northern Reception and Classification Center, in his/her individual capacity; ROYCE BROWN-REED, administrator of the Health Care Unit at Stateville Correctional Center Northern Reception and Classification Center, in her individual capacity; UNKNOWN STATEVILLE CORRECTIONAL CENTER CORRECTIONS EMPLOYEES; WEXFORD HEALTH SOURCES, INC.; SALEH OBAISI, M.D., Medical Director of Stateville Correctional Center Northern Reception and Classification Center, in his individual capacity; L. REDMAN, R.N., Certified Medical Technician S. MAYS; CRAIG HOWARD, M.A.; UNKNOWN EMPLOYEES OF WEXFORD HEALTH SOURCES, states as follows:

### Introduction

1.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Dale Piercy's rights as secured by the United States Constitution.

2.     On or about October 19, 2013, Dale Piercy died in the custody of Stateville Correctional Center in Crest Hill, Illinois. For several days prior to his death, both while at Stateville and while in the custody of the Whiteside County Jail, Mr. Piercy showed symptoms

of severe gastrointestinal disease, including vomiting blood and losing control of his bowels. He repeatedly sought medical attention, but despite his obvious medical need, Defendants ignored his requests and allowed his condition to worsen until Mr. Piercy died of a gastrointestinal hemorrhage.

## Jurisdiction and Venue

3. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 1367.

4. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all defendants reside in this judicial district. Further, a substantial part of the events or omissions giving rise to the claim occurred in this district.

## The Parties

5. Dale Piercy, deceased, was a fifty-four year old resident of Morrison, IL. Mr. Piercy was the father of Plaintiff AARON PIERCY, who is the duly appointed administrator of his estate.

6. At the time of the events at issue in this case, Mr. Piercy was incarcerated at the Whiteside County Jail in Morrison, Illinois, then at the Stateville Correctional Center's Northern Reception and Classification Center ("Stateville NRC"), operated by the Illinois Department of Corrections ("IDOC"), in Crest Hill, Illinois.

7. The Whiteside County Jail is operated by the Whiteside County Sherriff, Defendant Kelly WILHELMI.

8. At all times relevant to the events at issue in this case, Defendant WILHELMI was employed by the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, in the capacity of Sheriff. As such, he was acting under color of law.

9.      At all times relevant to the events at issue in this case, Defendant WILHELMI promulgated rules, regulations, policies, and procedures as Sheriff of Whiteside County for the provision of certain medical care by medical personnel and correctional officers.

10.     Defendants UNKNOWN WHITESIDE COUNTY CORRECTIONS OFFICERS were corrections officers at Whiteside County Jail during the period of Dale Piercy's incarceration there and employees of the WHITESIDE COUNTY SHERIFF'S DEPARTMENT. They were responsible for the safety and welfare of inmates, including Dale Piercy. They are sued here in their individual capacity. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the WHITESIDE COUNTY SHERIFF'S DEPARTMENT.

11.     Defendants UNKNOWN WHITESIDE COUNTY MEDICAL PERSONNEL were members of the medical staff at Whiteside County Jail during the period of Dale Piercy's incarceration there, and employees of the WHITESIDE COUNTY SHERIFF'S DEPARTMENT. They are each sued here in their individual capacity. They were responsible for the provision of medication to, medical care, treatment, and welfare of Plaintiff while he was detained at Whiteside County Jail. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the WHITESIDE COUNTY SHERIFF'S DEPARTMENT.

12.     Defendant ADVANCED CORRECTIONAL HEALTHCARE, INC. ("ACH") is an Illinois corporation based in Peoria that provides healthcare services at the Whiteside County Jail on behalf of the WHITESIDE COUNTY SHERIFF'S DEPARTMENT. ACH is a final policy maker for Whiteside County Jail.  As an agent of the WHITESIDE COUNTY

SHERIFF'S DEPARTMENT, ACH was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including JULIE WARKIN.

13.     Defendant JULIE WARKIN is a Licensed Practical Nurse working at the Whiteside County Jail and employed by ACH.  She was responsible for the provision of medication to, medical care, treatment, and welfare of Plaintiff while he was detained at WHITESIDE COUNTY JAIL. At all times relevant to the events at issue in this case, Defendant WARKIN was acting under color of law and within the scope of her employment with ACH. She is sued here in her individual capacity.

14.     Defendant WILLIAMS is Warden/Chief Administrative Officer at Stateville NRC and an employee of the IDOC. Warden WILLIAMS is a final policy maker for Stateville NRC and is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant WILLIAMS was acting under color of law and within the scope of his employment with IDOC.

15.     Defendant UNKNOWN ASSISTANT WARDEN OF PROGRAMS is an assistant warden at Stateville NRC with responsibility over the provision of medical care to inmates and an employee of IDOC. Defendant UNKNOWN ASSISTANT WARDEN OF PROGRAMS is a final policy maker for Stateville NRC and is sued here in his/her individual capacity. At all times relevant to the events at issue in this case, UNKNOWN ASSISTANT WARDEN OF PROGRAMS was acting under color of law and within the scope of his/her employment with IDOC.

16.     Defendant ROYCE BROWN-REED is the administrator of the Health Care Unit ("HCU") at Stateville NRC, and an employee of IDOC or alternatively an employee of Wexford Health Sources. BROWN-REED is a final policy maker for the HCU at Stateville NRC and is

5

sued here in her individual capacity. At all times relevant to the events at issue in this case, BROWN-REED was acting under color of law and within the scope of her employment with IDOC or WEXFORD.

17.     Defendants UNKNOWN STATEVILLE CORRECTIONAL CENTER CORRECTIONS EMPLOYEES were corrections officers at Stateville NRC during the period of Dale Piercy's incarceration there, and employees of IDOC. They were responsible for the safety and welfare of inmates, including Dale Piercy. They are sued here in their individual capacities. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with IDOC.

18.     Defendant WEXFORD HEALTH SOURCES, INC. ("WEXFORD") is a Florida Corporation transacting business in Illinois, and is a health care provider for IDOC facilities, including Stateville NRC. WEXFORD is a final policy maker for Stateville NRC.  As an agent of IDOC, WEXFORD was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including UNKNOWN MEDICAL STAFF at Stateville NRC.

19.     Defendant SALEH OBAISI, M.D., is Medical Director at Stateville NRC and an employee of WEXFORD HEALTH SOURCES. Defendant OBAISI is a final policy maker for Stateville NRC and is sued here in his individual capacity. At all times relevant to the events at issue in this case, OBAISI was acting under color of law and within the scope of his employment with IDOC.

20.     Defendants L. REDMAN, R.N., CRAIG HOWARD, M.A., Certified Medical Technician S. MAYS and UNKNOWN MEDICAL STAFF are members of the medical staff at Stateville NRC, and employees of either the IDOC or WEXFORD HEALTH SOURCES. They

are each sued here in their individual capacity. They were responsible for the provision of medication to, medical care, treatment, and welfare of Plaintiff while he was detained at Stateville NRC. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with IDOC or WEXFORD.

### General Allegations

21.     On or about September 25, 2013, Dale Piercy was taken into custody at the Whiteside County Jail.

22.     At the time he was taken into custody, Mr. Piercy complained of stomach pain and was given Zantac 75, an over-the-counter remedy for heartburn.

23.     On Sunday, September 29, 2013, Mr. Piercy was visited by his brother, Daniel Piercy, and by his mother. Dale Piercy told his brother that he had not been feeling well and had been vomiting blood for three days.

24.     On information and belief, Mr. Piercy reported his condition to medical and corrections personnel at Whiteside County Jail, but as of September 29, 2013, he had not been given any medication other than the Zantac 75.

25.     Daniel Piercy returned to visit again three days later on October 2, 2013. On information and belief, at that time, Mr. Piercy had still not been given any medication other than the Zantac 75.

26.     On October 4, 2013, Dale Piercy was transferred to Stateville NRC in Crest Hill, Illinois.

27.     On information and belief, Mr. Piercy's symptoms worsened over the next two weeks. He once again was vomiting blood, and at some point he began to lose control of his bowels. Mr. Piercy repeatedly told correctional and medical personnel about his symptoms and

his objectively serious medical needs, but Stateville NRC personnel ignored Mr. Piercy's requests for medical treatment.

28.     Around noontime on October 19, 2013, Mr. Piercy was finally brought by wheelchair to the Health Care Unit at Stateville NRC. By that time he was dehydrated, his color was pallid, his skin was cold to the touch, and his blood sugar was 480. Medical personnel were not even able to detect Mr. Piercy's pulse manually. Mr. Piercy was given oxygen and intravenous treatments, but after less than an hour, he "coded" (his respiration and heart beat stopped). At that time, medical personnel began CPR on Mr. Piercy.

29.     Medical personnel at Stateville NRC called an ambulance, which did not arrive for at least 30 minutes. Paramedics took Mr. Piercy to St. Joseph's Hospital, but he was pronounced dead shortly after arriving.

30.     As described more fully above, Defendants had notice of Dale Piercy's objectively serious medical need, and yet they failed to provide him with necessary medical attention, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

## Count I – 42 U.S.C. § 1983
### Denial of Medical Care

31.     Each paragraph of this Complaint is incorporated as if restated fully herein.

32.     As a result of the unjustified and unconstitutional conduct of Defendants, Dale Piercy experienced pain, suffering, emotional distress, injury, and ultimately, death.

33.     The misconduct alleged in this count was objectively unreasonable and was undertaken with malice, willfulness, and reckless indifference to the rights of others.

8

34.     Alternatively, Defendants were deliberately indifferent to Dale Piercy's objectively serious medical needs, and their acts were undertaken intentionally, with malice, willfulness, and deliberate indifference to the rights of others.

35.     Dale Piercy's injuries were proximately caused by policies and practices on the part of the Whiteside County Sheriff, Defendant WILHELMI, ACH, IDOC, WEXFORD HEALTH SOURCES, Defendant OBAISI, and Defendant UNKNOWN ASSISTANT WARDEN OF PROGRAMS.

36.     In September and October 2013, Defendant WILHELMI had notice of a widespread practice by employees at the Whiteside County Jail under which inmates with serious medical conditions, such as Dale Piercy, were routinely denied access to proper or sufficient medication and medical diagnosis and treatment. It is common in the Whiteside County Jail to observe inmates with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored.

37.     Specifically, there exists a widespread practice at Whiteside County Jail under which Jail employees, including correctional officers and medical personnel, commonly fail or refuse to: (1) properly examine an inmate with a serious medical condition; (2) provide proper medication to an inmate with a serious medical condition; (3) respond to inmates who have requested medical attention or medication or asked to see a doctor; or (4) respond to inmates who exhibit obvious signs of a serious medical condition or illness.

38.     This widespread practice is allowed to flourish because Defendant WILHELMI, as Sheriff, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control correctional officers and

9

medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Dale Piercy. In this way, the Sheriff violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

39.     The above-described widespread practice, so well settled as to constitute de facto policy in the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, were able to exist and thrive because governmental policymakers with authority over the same, namely, Sheriff Kelly WILHELMI, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

40.     In addition, in September and October 2013, Defendant ACH had notice of a widespread practice by medical personnel at the Whiteside County Jail under which inmates with serious medical conditions, such as Dale Piercy, were routinely denied access to proper or sufficient medication and medical diagnosis and treatment. It is common at Whiteside County Jail to observe inmates with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored by medical personnel.

41.     Specifically, there exists a widespread practice at Whiteside County Jail under which medical personnel employed by ACH commonly fail or refuse to: (1) properly examine an inmate with a serious medical condition; (2) provide proper medication to an inmate with a serious medical condition; (3) respond to inmates who have requested medical attention or medication or asked to see a doctor; or (4) respond to inmates who exhibit obvious signs of a serious medical condition or illness.

42.     This widespread practice is allowed to flourish because Defendant ACH, which directs the provision of health care services at Whiteside County Jail, directly encourages and is

thereby the moving force behind the very type of misconduct at issue by failing to adequately train and supervise medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Dale Piercy. In this way, ACH violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

43. The above-described widespread practice, so well settled as to constitute de facto policy in the Whiteside County Jail, were able to exist and thrive because governmental policymakers with authority over the same, namely, Defendant ACH, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

44. In addition, in September and October 2013, Defendant WEXFORD had notice of a widespread practice by medical personnel at Stateville NRC under which inmates with serious medical conditions, such as Dale Piercy, were routinely denied access to proper or sufficient medication and medical diagnosis and treatment. It is common at Stateville NRC to observe inmates with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored by medical personnel.

45. Specifically, there exists a widespread practice at Stateville Correctional Center under which medical personnel employed by WEXFORD commonly fail or refuse to: (1) properly examine an inmate with a serious medical condition; (2) provide proper medication to an inmate with a serious medical condition; (3) respond to inmates who have requested medical attention or medication or asked to see a doctor; or (4) respond to inmates who exhibit obvious signs of a serious medical condition or illness.

46.     This widespread practice is allowed to flourish because Defendant WEXFORD, which directs the provision of health care services at Stateville NRC, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train and supervise medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Dale Piercy. In this way, WEXFORD violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

47.     The above-described widespread practice, so well settled as to constitute de facto policy in Stateville NRC, were able to exist and thrive because governmental policymakers with authority over the same, namely, Defendant WEXFORD, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

48.     In addition, in September and October 2013, Defendant SALEH OBAISI, M.D., had notice of a widespread practice by medical personnel at Stateville NRC under which inmates with serious medical conditions, such as Dale Piercy, were routinely denied access to proper or sufficient medication and medical diagnosis and treatment. It is common at Stateville NRC to observe inmates with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored by corrections employees.

49.     Specifically, there exists a widespread practice at Stateville NRC under which medical personnel commonly fail or refuse to: (1) properly examine an inmate with a serious medical condition; (2) provide proper medication to an inmate with a serious medical condition; (3) respond to inmates who have requested medical attention or medication or asked to see a

doctor; or (4) respond to inmates who exhibit obvious signs of a serious medical condition or illness.

50.     This widespread practice is allowed to flourish because Defendant OBAISI, who oversees medical personnel at Stateville NRC, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train and supervise medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Dale Piercy. In this way, Defendant OBAISI violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

51.     The above-described widespread practice, so well settled as to constitute de facto policy in Stateville NRC, was able to exist and thrive because governmental policymakers with authority over the same, namely, Defendant OBAISI exhibited deliberate indifference to the problem, thereby effectively ratifying it.

52.     In addition, in September and October 2013, Defendant WILLIAMS had notice of a widespread practice by correctional employees at Stateville NRC under which inmates with serious medical conditions, such as Dale Piercy, were routinely denied access to proper or sufficient medication and medical diagnosis and treatment. It is common at Stateville NRC to observe inmates with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored by corrections employees.

53.     Specifically, there exists a widespread practice at Stateville NRC under which correctional officers commonly fail or refuse to: (1) properly examine an inmate with a serious medical condition; (2) provide proper medication to an inmate with a serious medical condition;

13

(3) respond to inmates who have requested medical attention or medication or asked to see a doctor; or (4) respond to inmates who exhibit obvious signs of a serious medical condition or illness.

54.     This widespread practice is allowed to flourish because Defendant WILLIAMS, who oversees all corrections personnel at Stateville NRC, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train and supervise correctional officers, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Dale Piercy. In this way, Defendant WILLIAMS violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

55.     The above-described widespread practice, so well settled as to constitute de facto policy in Stateville NRC, was able to exist and thrive because governmental policymakers with authority over the same, namely, Defendant WILLIAMS exhibited deliberate indifference to the problem, thereby effectively ratifying it.

56.     In addition, in September and October 2013, Defendants UNKNOWN ASSISTANT WARDEN OF PROGRAMS and ROYCE BROWN-REED, administrator of the Health Care Unit at Stateville NRC, had notice of a widespread practice by IDOC employees at Stateville NRC under which inmates with serious medical conditions, such as Dale Piercy, were routinely denied access to proper or sufficient medication and medical diagnosis and treatment. It is common at Stateville NRC to observe inmates with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored by corrections employees.

14

57.     Specifically, there exists a widespread practice at Stateville NRC under which IDOC medical and other staff commonly fail or refuse to: (1) properly examine an inmate with a serious medical condition; (2) provide proper medication to an inmate with a serious medical condition; (3) respond to inmates who have requested medical attention or medication or asked to see a doctor; or (4) respond to inmates who exhibit obvious signs of a serious medical condition or illness.

58.     This widespread practice is allowed to flourish because Defendants UNKNOWN ASSISTANT WARDEN OF PROGRAMS and BROWN-REED, who oversee the provision of medical care to inmates at Stateville NRC, directly encourage and are thereby the moving force behind the very type of misconduct at issue by failing to adequately train and supervise correctional officers and medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Dale Piercy. In this way, Defendants UNKNOWN ASSISTANT WARDEN OF PROGRAMS and BROWN-REED violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

59.     The above-described widespread practice, so well settled as to constitute de facto policy in Stateville NRC, was able to exist and thrive because governmental policymakers with authority over the same, namely, Defendants UNKNOWN ASSISTANT WARDEN OF PROGRAMS and BROWN-REED exhibited deliberate indifference to the problem, thereby effectively ratifying it.

60.     Dale Piercy's injuries were caused by employees of WHITESIDE COUNTY, the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, IDOC, and WEXFORD HEALTH

SOURCES, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

## Count II - 42 U.S.C. § 1983
### Conspiracy

61.     Each paragraph of this Complaint is incorporated as if fully restated herein.

62.     Defendants reached an agreement among themselves to deprive Dale Piercy of his constitutional rights and to protect one another from liability for depriving Dale Piercy of his rights, all as described in the various paragraphs of this Complaint.

63.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

64.     The misconduct described in this count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

65.     As a direct and proximate result of the illicit prior agreement referenced above, Dale Piercy's rights were violated and he suffered injuries, including emotional distress and death.

66.     Dale Piercy's injuries were caused by employees of WHITESIDE COUNTY, the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, ACH, IDOC, and WEXFORD HEALTH SOURCES, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices of the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, ACH, Stateville NRC, and WEXFORD HEALTH SOURCES.

## Count III - 42 U.S.C. § 1983
### Failure to Intervene

67.     Each paragraph of this Complaint is incorporated as if restated fully herein.

68.     As described more fully above, one or more Defendants had a reasonable opportunity to prevent the violation of Dale Piercy's constitutional rights as set forth above but failed to do so.

69.     Defendants' actions were undertaken intentionally, with malice and reckless indifference to Dale Piercy's rights.

70.     As a direct and proximate result of the misconduct described in this Count, Dale Piercy's rights were violated and he suffered injuries, including but not limited to emotional distress and death.

71.     Dale Piercy's injuries were caused by employees of WHITESIDE COUNTY, the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, ACH, IDOC, and WEXFORD HEALTH SOURCES, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices of the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, ACH, Stateville NRC, and WEXFORD HEALTH SOURCES.

## Count IV – State Law Claim
### Intentional Infliction of Emotional Distress

72.     Each paragraph of this Complaint is incorporated as if fully restated herein.

73.     In the manner described more fully above, by denying Dale Piercy medical attention and care, the Defendants engaged in extreme and outrageous conduct.

74.     In carrying out the actions described above, Defendants either intended to inflict or knew that there was a high probability that their conduct would cause severe emotional distress.

75.     Defendants' actions were undertaken with malice, willfulness, and reckless indifference to the rights of others.

76.     The misconduct described in this Count was undertaken by Defendants within the scope of their employment such that their employers, WHITESIDE COUNTY, WHITESIDE COUNTY SHERIFF'S DEPARTMENT, ACH, and WEXFORD HEALTH SOURCES are liable for their actions.

77.     As a direct and proximate result of misconduct, Dale Piercy suffered injuries including but not limited to severe emotional distress and death.

**Count V – State Law Claim**<br>**Wrongful Death**

78.     Each paragraph of this complaint is incorporated as if restated fully herein.

79.     Plaintiff Aaron Piercy, as next-of-kin, claims damages for the wrongful death of Dale Piercy, and for the loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, and for Plaintiff's mental anguish caused by this loss, as well as for cremation expenses pursuant to 740 ILCS § 180/1, the Illinois Wrongful Death Act.

80.      As described more fully in the preceding paragraphs, the actions of the Defendants breached the duty of care owed to detainees in their care. They did so by negligently ignoring Dale Piercy's request for medical attention.

81.     Alternatively, the actions of the Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were conscious that an injury would probably result from the above-described course of action and recklessly disregarded the consequences of those actions.

82.     As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Dale Piercy suffered injuries, including death.

83.     Defendants' actions were undertaken willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

84.     Defendants' actions proximately caused Dale Piercy great bodily harm and death, as well as great pain and suffering to Plaintiff Aaron Piercy.

## Count V – State Law Claim
### Survival Action

85.     Each paragraph of this Complaint is incorporated as if restated fully herein.

86.     Before his death as a result of Defendants' misconduct, Dale Piercy was forced to endure great conscious pain and suffering.

87.     Dale Piercy filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

88.     Plaintiff Aaron Piercy, in his capacity as Administrator of the Estate of Aaron Piercy, claims damages for the conscious pain and suffering of Dale Piercy, pursuant to 755 ILCS § 5/27-6, commonly referred to as the Illinois Survival Act.

## Count VII – State Law Claim
### Respondeat Superior

89.     Each paragraph of this Complaint is incorporated as if restated fully herein.

90.     In committing the acts alleged in the preceding paragraphs, Defendants were employees and agents of WHITESIDE COUNTY, the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, ACH, and WEXFORD HEALTH SOURCE, acting at all relevant times within the scope of their employment.

91.     WHITESIDE COUNTY, The WHITESIDE COUNTY SHERIFF'S DEPARTMENT, ACH, and WEXFORD HEALTH SOURCES are liable as principal for all torts committed by their agents.

**Count VIII – State Law Claim**
**Indemnification**

92. Each paragraph of this Complaint is incorporated as if restated fully herein.

93. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

94. Defendants are or were employees of WHITESIDE COUNTY, the WHITESIDE COUNTY SHERIFF'S DEPARTMENT, and Stateville Correctional Center, who acted within the scope of their employment in committing the misconduct described above.

95. Whiteside County and the State of Illinois are obligated to pay any judgment entered against individual Defendants within the scope of their employment.

WHEREFORE, Plaintiff, AARON PIERCY, as Administrator of the ESTATE OF DALE PIERCY, respectfully requests that this Court enter a judgment in his favor and against Defendants, WHITESIDE COUNTY, Illinois; SHERIFF'S DEPARTMENT OF WHITESIDE COUNTY; KELLY WILHELMI, individually and in his capacity as Sheriff of Whiteside County; UNKNOWN WHITESIDE COUNTY CORRECTIONS OFFICERS, UNKNOWN WHITESIDE COUNTY MEDICAL PERSONNEL; ADVANCED CORRECTIONAL HEALTHCARE, INC.; JULIE WARKIN, LPN, TARRY WILLIAMS, Warden of Stateville Correctional Center Northern Reception and Classification Center, in his individual capacity; UNKNOWN ASSISTANT WARDEN OF PROGRAMS, Stateville Correctional Center Northern Receiving and Classification Center, in his/her individual capacity; ROYCE BROWN-REED, administrator of the Health Care Unit at Stateville Correctional Center Northern Reception and Classification Center, in her individual capacity; UNKNOWN STATEVILLE CORRECTIONAL CENTER CORRECTIONS EMPLOYEES; WEXFORD HEALTH

20

SOURCES, INC.; SALEH OBAISI, M.D., Medical Director of Stateville Correctional Center

Northern Reception and Classification Center, in his individual capacity; L. REDMAN, R.N.,

Certified Medical Technician S. MAYS; CRAIG HOWARD, M.A.; UNKNOWN MEDICAL

STAFF at Stateville NRC; EMPLOYEES OF WEXFORD HEALTH SOURCES, awarding

compensatory damages, including medical and cremation expenses, punitive damages, attorneys'

fees and costs, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, AARON PIERCY, hereby demands a trial by jury pursuant to Federal Rule of

Civil Procedure 38(b) on all issues so triable.

DATE: November 10, 2014                              Respectfully submitted,

                                                     By: s/ Gretchen E. Helfrich
                                                     *One of Plaintiff's Attorneys*

Jon Loevy
Arthur Loevy
Vince Field
Sarah Grady
Gretchen E. Helfrich
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900
jon@loevy.com
vince@loevy.com
sarah@loevy.com
gretchen@loevy.com
*Attorneys for Plaintiff*

21