IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| AARON PIERCY, as Administrator of the Estate of Dale Piercy, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 7398 |
| | ) | |
| KELLY WILHELMI, individually and in his capacity as Sheriff of Whiteside County; JULIE WARKINS; DAN WILLIAMS; ADVANCED CORRECTIONAL HEALTHCARE, INC.; UNKNOWN ACH EMPLOYEES; TARRY WILLIAMS; MICHAEL LEMKE; RICARDO TEJEDA; NIKKI ROBINSON; GLEN ELBERSON; ROYCE BROWN-REED; ESTER MARTIN; CYNTHIA GARCIA; JOY VANDERWEIT; VALERIE CHRISTENSEN; MARY JO O'SULLIVAN; KHADEER AHMED; ARTHUR FUNK; VIPIN SHAH; EUARISTO AGUINALDO; PAUL TALBOT; SALEH OBAISI; WEXFORD HEALTH SOURCES, INC.; MELINDA PARRA; MEGAN PINAS; JOHN LOEROP; ATHENA ROSSITER; KRISTINA KASHIRSKY; CANDACE KAMINSKI; JENNIFER ENCARNACION; SAMPSON ONWUEYI; JAMIE PITTS; DONNA MORRIS; JOANNE WARREN; BRANDON WILK; RUKIYA COLONE; JENNIFER COLEMAN; SANDRA GEDMINAS; NURSE LIGGINS, L.P.N.; TIFFANY UTKE; NURSE LEWONDOWSKI; GERALD DIMAILIG; JENNIFER ASANTE; NURSE HUNT, R.N.; AMY BARTLETT; NURSE HARDY, L.P.N.; MARIAN ANDREWS; LINDA PARISI; LEE REDMAN; CRAIG HOWARD; SARAH MAYS; ANDRIA BACOT; DAVID BARNES; NAVEEN NAGPAL; LORNA ANDERS; WENDY OLSEN-FOXON; REBECCA BUCZKOWSKI; KIMBERLY AYE; BURNADINE DAMON; MACIEJ TOMCZYK; BRYAN SULLIVAN; JASON WEINER; KENNETH WEST; ALSHEENA VAUGHN; ANGELA SMITH; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer  Magistrate Judge Susan E. Cox    JURY TRIAL DEMANDED |

STEPHEN JAMES; DARRIN ATKINS;                  )
CLARENCE EGBE; MICHAEL SIMMONS;                )
KAYLA BROWN; LINDSAY NEILL; LT.                )
BROWN; RANDA UWAINAT; JOHNNY                   )
FRAZIER; HERBERT HUGHEY; KESHA                 )
ALVAREZ; JEFFREY CLARK; ROBERT                 )
ARNDT; SHEILA BACKSTROM; LATAYA                )
CRAWFORD; LT. KIRK; CESAR                       )
ANDRADE; ROSALIND ALLEN; GAYLA                 )
DICKERSON; ALLAN HOPKINS;                       )
BARTHOLOMEW ALLEN; OFFICER                     )
BLAIR; DEREK ANDERSON; FELICIA                 )
WALTON; MARC ANASTACIO; OFFICER                )
PATTERSON; PHILLIP MARTIN; STUART              )
MAHEIA; LT. WARE; LOUIS KOVACH;                )
STEVEN SELMON; ANDREW STRUB;                   )
AARON WINTERS; JAMES PORTER;                    )
DAVID SEYLLER; OLIVER HENDERSON;               )
PEDRO DOMINGUEZ; TULINA LINDSEY;               )
JEFFERY NURSE; SERGIO VALLE; EDDIE             )
SMITH; OFFICER RAINES; ROBERT                  )
PETERSON; BRIAN KIERCZYNSKI;                   )
RICARDO SARABIA; OFFICER D. BATTS;             )
ANTOINETTE HINTON; OFFICER                     )
THOMAS; KONRAD BORUTA; LT.                      )
WILLIAMS; TIMOTHY O'BRIEN;                      )
GHASSAN HANNA; STEPHEN                          )
CORNELIUS; DORSEY DOUGLAS;                      )
PATRICK MCCARTHY; LYNDELL FOLA;                )
STEVEN ERICKSON; MICHAEL                        )
BUCZKOWSKI; ANTHONY DAVIS; RALPH               )
BURKYBILE; LT. OFFICER MITCHELL; LT.           )
JOHN DOE NOS. 1–2; OFFICER JOHN ROE            )
NOS. 1–5,                                       )
                                                )
                    Defendants.                 )

## PLAINTIFF'S [*Proposed*] THIRD AMENDED COMPLAINT

Now comes Plaintiff AARON PIERCY, as Administrator of the Estate of Dale Piercy, by

and through his attorneys, Loevy & Loevy, and complaining of Defendants KELLY

WILHELMI, individually and in his capacity as Sheriff of Whiteside County; DAN

WILLIAMS; JULIE WARKINS; ADVANCED CORRECTIONAL HEALTHCARE, INC.; and

2

UNKNOWN ACH EMPLOYEES (collectively, the ACH Defendants); TARRY WILLIAMS;

MICHAEL LEMKE; NIKKI ROBINSON; GLEN ELBERSON; ROYCE BROWN-REED;

ESTER MARTIN; CYNTHIA GARCIA; JOY VANDERWEIT; VALERIE CHRISTENSEN;

MARY JO O'SULLIVAN; KHADEER AHMED; ARTHUR FUNK; VIPIN SHAH;

EUARISTO AGUINALDO; PAUL TALBOT; SALEH OBAISI; and WEXFORD HEALTH

SOURCES, INC. (collectively, the NRC Supervisory Defendants); MELINDA PARRA;

MEGAN PINAS; JOHN LOEROP; ATHENA ROSSITER; KRISTINA KASHIRSKY;

CANDACE KAMINSKI; JENNIFER ENCARNACION; SAMPSON ONWUEYI; JAMIE

PITTS; DONNA MORRIS; JOANNE WARREN; BRANDON WILK; RUKIYA COLONE;

JENNIFER COLEMAN; SANDRA GEDMINAS; NURSE LIGGINS; TIFFANY UTKE;

NURSE LEWONDOWSKI; GERALD DIMAILIG; JENNIFER ASANTE; NURSE HUNT;

AMY BARTLETT; NURSE HARDY; MARIAN ANDREWS; LINDA PARISI; LEE

REDMAN; CRAIG HOWARD; SARAH MAYS; ANDRIA BACOT; DAVID BARNES;

NAVEEN NAGPAL; LORNA ANDERS; WENDY OLSEN-FOXON; REBECCA

BUCZKOWSKI; and KIMBERLY AYE (collectively, the IDOC Medical Defendants); and

BURNADINE DAMON; MACIEJ TOMCZYK; BRYAN SULLIVAN; JASON WEINER;

KENNETH WEST; ALSHEENA VAUGHN; ANGELA SMITH; STEPHEN JAMES; DARRIN

ATKINS; CLARENCE EGBE; MICHAEL SIMMONS; KAYLA BROWN; LINDSAY NEILL;

LIEUTENANT BROWN; RANDA UWAINAT; JOHNNY FRAZIER; HERBERT HUGHEY;

KESHA ALVAREZ; JEFFREY CLARK; ROBERT ARNDT; SHEILA BACKSTROM;

LATAYA CRAWFORD; LIEUTENANT KIRK; CESAR ANDRADE; ROSALIND ALLEN;

GAYLA DICKERSON; ALLAN HOPKINS; BARTHOLOMEW ALLEN; OFFICER BLAIR;

DEREK ANDERSON; FELICIA WALTON; MARC ANASTACIO; OFFICER PATTERSON;

PHILLIP MARTIN; STUART MAHEIA; LIEUTENANT WARE; LOUIS KOVACH; STEVEN

SELMON; ANDREW STRUB; AARON WINTERS; JAMES PORTER; DAVID SEYLLER;

OLIVER HENDERSON; PEDRO DOMINGUEZ; TULINA LINDSEY; JEFFERY NURSE;

SERGIO VALLE; EDDIE SMITH; OFFICER RAINES; ROBERT PETERSON; BRIAN

KIERCZYNSKI; RICARDO SARABIA; OFFICER D. BATTS; ANTOINETTE HINTON;

OFFICER THOMAS; KONRAD BORUTA; LIEUTENANT WILLIAMS; TIMOTHY

O'BRIEN; GHASSAN HANNA; STEPHEN CORNELIUS; DORSEY DOUGLAS; PATRICK

MCCARTHY; LYNDELL FOLA; STEVEN ERICKSON; MICHAEL BUCZKOWSKI;

ANTHONY DAVIS; RALPH BURKYBILE; OFFICER MITCHELL; LIEUTENANT JOHN

DOE NOS. 1–2; OFFICER JOHN ROE NOS. 1–5 (collectively, the IDOC Correctional

Defendants), states as follows:

## Introduction

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation

under color of law of Dale Piercy's rights as secured by the United States Constitution.

2.      On or about October 19, 2013, Dale Piercy collapsed at Stateville Correctional

Center – Northern Reception Center (Stateville NRC) and died shortly afterward. For several

days prior to his death, both while at Stateville NRC and while at the Whiteside County Jail

(where he was first taken into custody), Mr. Piercy showed symptoms of severe gastrointestinal

disease, including vomiting blood and losing control of his bowels. He repeatedly sought

medical attention, but despite his obvious medical need, Defendants ignored his requests and

allowed his condition to worsen until Mr. Piercy died of a gastrointestinal hemorrhage.

## Jurisdiction and Venue

3.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 1367.

4.     Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all Defendants reside in this judicial district. Further, a substantial part of the events or omissions giving rise to the claim occurred in this district.

## Parties

5.     Dale Piercy, the decedent, was a fifty-four year old who was confined at Whiteside County Jail in Morrison, Illinois from September 25, 2013 through October 4, 2013. He was confined at Stateville NRC in Crest Hill, Illinois from October 4, 2013 until his death on October 19, 2013. Plaintiff Aaron Piercy is Dale Piercy's son, and the duly appointed administrator of his estate.

6.     The Whiteside County Jail is operated by the Whiteside County Sherriff, Defendant Kelly Wilhelmi. At all times relevant to the events at issue in this case, Defendant Wilhelmi was employed by the Whiteside County Sheriff's Department, in the capacity of Sheriff. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Defendant Wilhelmi promulgated rules, regulations, policies, and procedures as Sheriff of Whiteside County for the provision of certain medical care by medical personnel and correctional officers.

7.     Defendant Advanced Correctional Healthcare, Inc. (ACH) is an Illinois corporation based in Peoria that provides healthcare services at the Whiteside County Jail on behalf of the Whiteside County Sheriff's Department. ACH is a final policy maker for Whiteside County Jail. As an agent of the Whiteside County Sheriff's Department, ACH was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including Julie Warkins and Dan Williams.

5

8.      Defendant Dan Williams is a Physician's Assistant working at the Whiteside County Jail and employed by ACH. He was the health care provider responsible for the medical care, treatment, and welfare of Plaintiff while he was detained at the Whiteside County Jail. At all times relevant to the events at issue in this case, Defendant Williams was acting under color of law and within the scope of his employment with ACH. He is sued here in his individual capacity.

9.      Defendant Julie Warkins is a Licensed Practical Nurse working at the Whiteside County Jail and employed by ACH. She was responsible for the provision of medication to, medical care, treatment, and welfare of Plaintiff while he was detained at the Whiteside County Jail. At all times relevant to the events at issue in this case, Defendant Warkins was acting under color of law and within the scope of her employment with ACH. She is sued here in her individual capacity.

10.     At all times relevant to his involvement in this case, Defendant Tarry Williams was the Warden at Stateville NRC, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville NRC. Defendant Williams is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Williams was acting under color of law and within the scope of his employment with the IDOC.

11.     In the alternative, at all times relevant to his involvement in this case, Defendant Michael Lemke was the Warden at Stateville NRC, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville NRC. Defendant Lemke is sued here in his individual capacity. At all times relevant to

6

the events at issue in this case, Defendant Lemke was acting under color of law and within the scope of his employment with the IDOC.

12. At all times relevant to his involvement in this case, Defendant Ricardo Tejeda was the Assistant Warden of Operations at Stateville NRC and an employee of the IDOC. Defendant Tejeda was responsible for the oversight and supervision of correctional officers and supervisors at Stateville NRC, and for the implementation of policies and practices at Stateville NRC related to supervision of prisoners by correctional officers there. Defendant Tejeda is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Tejeda was acting under color of law and within the scope of his employment with the IDOC.

13. At all times relevant to his involvement in this case, Defendant Nikki Robinson was the Assistant Warden of Programs at Stateville NRC and an employee of the IDOC. Defendant Robinson was responsible for the oversight and supervision of medical staff and the healthcare unit at Stateville NRC, and for the implementation of policies and practices at Stateville NRC related to the healthcare unit and ensuring access to medical care there. Defendant Robinson is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Robinson was acting under color of law and within the scope of his employment with the IDOC.

14. At all times relevant to his involvement in this case, Defendant Glen Elberson was responsible for providing training to security and medical staff at Stateville NRC, and an employee of the IDOC. Defendant Elberson is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Elberson was acting under color of law and within the scope of his employment with the IDOC.

15.     Defendant Wexford Health Sources, Inc. (Wexford) is a corporation headquartered in Pennsylvania transacting business in Illinois. Wexford, pursuant to a contract with the State of Illinois, is a healthcare provider for IDOC prisons throughout the State. At all times relevant to the events at issue in this case, Wexford was responsible for the implementation, oversight, and supervision of policies and practices at Stateville NRC and the IDOC generally. As an agent of the IDOC, Wexford was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including the individual Defendants.

16.     At all times relevant to her involvement in this case, Defendant Royce Brown-Reed was the Administrator of the Healthcare Unit at Stateville NRC, and an employee of the IDOC. As Healthcare Unit Administrator, Defendant Brown-Reed was responsible for oversight and supervision of medical staff at Stateville NRC, and for the implementation of policies and practices at Stateville NRC related to the provision of healthcare and access to healthcare to prisoners at the prison. Defendant Brown-Reed is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Brown-Reed was acting under color of law and within the scope of his employment with the IDOC.

17.     At all times relevant to their involvement in this case, Defendants Ester Martin and Cynthia Garcia were Directors of Nursing at Stateville NRC and employees of the IDOC and Wexford, respectively. As Directors of Nursing, Defendants Martin and Garcia were responsible for oversight and supervision of the nursing staff at Stateville NRC, and for the implementation of policies and practices at Stateville NRC related to medical care and access to medical care by the nursing staff at the prison. As Director of Nursing for Wexford, Defendant Garcia was a final policymaker for Wexford. Defendants Martin and Garcia are sued here in their individual

8

capacities. At all times relevant to the events at issue in this case, Defendants Martin and Garcia were acting under color of law and within the scope of the employment.

18.     At all times relevant to their involvement in this case, Defendants Joy Vanderweit, Valerie Christensen, and Mary Jo O'Sullivan were nursing supervisors at Stateville NRC, and employees of the IDOC, Wexford, and Wexford, respectively. As nursing supervisors, Defendants Vanderweit, Christensen, and O'Sullivan were responsible for oversight and supervision of the nursing staff at Stateville NRC during the shifts that they worked at the facility. Defendants Vanderweit, Christensen, and O'Sullivan are sued here in their individual capacities. At all times relevant to the events at issue in this case, Defendants Vanderweit, Christensen, and O'Sullivan were acting under color of law and within the scope of their employment.

19.     At all relevant to his involvement in this case, Defendant Khadeer Ahmed was the Medical Director at Stateville NRC, an employee of and final policymaker for Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville NRC. Defendant Ahmed is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Ahmed was acting under color of law and within the scope of his employment.

20.     At all times relevant to his involvement in this case, Defendant Arthur Funk was the Regional Medical Director and *de facto* co-Medical Director at Stateville NRC, an employee of and final policymaker for Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville NRC. Defendant Funk is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Funk was acting under color of law and within the scope of his employment.

21.    At all times relevant to his involvement in this case, Defendant Saleh Obaisi worked as a *de facto* co-Medical Director at Stateville NRC, an employee of and final policymaker for Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices at Stateville NRC. Defendant Obaisi is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Obaisi was acting under color of law and within the scope of his employment.

22.    At all times relevant to their involvement in this case, Defendants Vipin Shah, Euaristo Aguinaldo, and Paul Talbot were physicians at Stateville NRC, and employees of Wexford. Defendants Shah, Aguinaldo, and Talbor are sued here in their individual capacities. At all times relevant to the events at issue in this case, Defendants Shah, Aguinaldo, and Talbot were acting under color of law and within the scope of their employment.

23.    At all times relevant to their involvement in this case, Defendants Melinda Parra, Megan Pinas, Lohn Loerop, Athena Rossiter, Kristina Kashirsky, Candace Kaminski, Jennifer Encarnacion, Sampson Onwueyi, Jamie Pitts, Donna Morris, Joanne Warren, Brandon Wilk, Rukiya Colone, Jennifer Coleman, Sandra Gedminas, Nurse Liggins, Tiffany Utke, Nurse Lewondowski, Gerald Dimailig, Jennifer Asante, Nurse Hunt, Amy Bartlett, Nurse Hardy, Marian Andrews, Linda Parisi, and Lee Redman were nurses at Stateville NRC, and employees of Wexford or the IDOC. They are all sued here in their individual capacities, and were acting under color of law and within the scope of their employment at all times relevant to the events at issue in this case.

24.    At all times relevant to his involvement in this case, Defendant Craig Howard was a psychologist at Stateville NRC and an employee of the IDOC. Defendant Howard is sued here

in his individual capacity. At all times relevant to the events at issue in this case, Defendant Howard was acting under color of law and within the scope of his employment.

25.     At all times relevant to their involvement in this case, Defendants Sarah Mays, Andria Bacot, David Barnes, Naveen Nagpal, Lorna Anders, Wendy Olsen-Foxon, Rebecca Buczkowski, and Kimberly Aye were correctional medical technicians at Stateville NRC, and employees of the IDOC. They are all sued here in their individual capacities, and were acting under color of law and within the scope of their employment at all times relevant to the events at issue in this case.

26.     At all times relevant to their involvement in this case, Defendants Bryan Sullivan, Alsheena Vaughn, Clarence Egbe, Lieutenant Brown, Herbert Hughey, Gayla Dickerson, Lieutenant Kirk, Phillip Martin, Lieutenant Ware, Jeffery Nurse, Lieutenant Williams, Michael Buczkowski, Anthony Davis, and Ralph Burkybile were lieutenants who monitored prisoners and supervised correctional staff in Housing Unit R at Stateville NRC. They are all employees of the IDOC, and are sued here in their individual capacities. At all times relevant to the events at issue in this case, they were acting under color of law and within the scope of their employment.

27.     Defendant Lieutenant John Doe No. 1 is the lieutenant whose handwritten name appears on page 1 of Exhibit A. Defendant Lieutenant John Doe No. 2 is the lieutenant whose handwritten name appears on page 2 of Exhibit A. At all times relevant to their involvement in this case, Defendants Lt. John Doe 1 and 2 are both lieutenants who monitored prisoners and supervised correctional staff in Housing Unit R at Stateville NRC. They are both employees of the IDOC, and are sued here in their individual capacities. At all times relevant to the events at issue in this case, they were acting under color of law and within the scope of their employment.

28.     At all times relevant to their involvement in this case, Defendants Burnadine Damon, Maciej Tomczyk, Jason Weiner, Kenneth West, Angela Smith, Stephen James, Darrin Atkins, Michael Simmons, Kayla Brown, Lindsay Neill, Randa Uwainat, Johnny Frazier, Kesha Alvarez, Jeffrey Clark, Robert Arndt, Sheila Backstrom, Lataya Crawford, Cesar Andrade, Rosalind Allen, Allan Hopkins, Bartholomew Allen, Officer Blair, Derek Anderson, Felicia Walton, Marc Anastacio, Officer Patterson, Stuart Maheia, Louis Kovach, Steven Selmon, Andrew Strub, Aaron Winters, James Porter, David Seyller, Oliver Henderson, Pedro Dominguez, Tulina Lindsey, Sergio Valle, Eddie Smith, Officer Raines, Robert Peterson, Brian Kierczynski, Ricardo Sarabia, Officer D. Batts, Antoinette Hinton, Officer Thomas, Konrad Boruta, Timothy O'Brien, Ghassan Hanna, Stephen Cornelius, Dorsey Douglas, Patrick McCarthy, Lyndell Fola, Steven Erickson, and Officer Mitchell were correctional officers and supervisors who monitored prisoners in Housing Unit R at Stateville NRC. They are all employees of the IDOC, and are sued here in their individual capacities. At all times relevant to the events at issue in this case, they were acting under color of law and within the scope of their employment.

29.     Defendant Officer John Roe No. 1 is the correctional officer whose handwritten name appears on the line for "Unit Sgt." on page 3 of Exhibit A. Defendant Officer John Roe No. 2 is the correctional officer whose handwritten name appears on the line for "Unit Sgt." on page 4 of Exhibit A. Defendant Officer John Roe No. 3 is the correctional officer whose handwritten name appears on the line for "Gallery 1 Officer" on page 4 of Exhibit A. Defendant Officer John Roe No. 4 is the correctional officer whose handwritten name appears on the line for "Gallery 1 Officer" on page 5 of Exhibit A. Defendant Officer John Roe No. 5 is the correctional officer whose handwritten name appears on the line for "Escort/Rover Officer" on

page 5 of Exhibit A. At all times relevant to their involvement in this case, Defendants Ofc. John

Roe 1–5 are correctional officers and supervisors who monitored prisoners at Housing Unit R at

Stateville NRC. They are all employees of the IDOC, and are sued in their individual capacities.

At all times relevant to the events at issue in this case, they were acting under color of law and

within the scope of their employment.

### Allegations

30.     On or about September 25, 2013, Dale Piercy was taken into custody at the

Whiteside County Jail.

31.     At the time he was taken into custody, Mr. Piercy complained of stomach pain

and was given Zantac 75, an over-the-counter remedy for heartburn.

32.     On Sunday, September 29, 2013, Mr. Piercy was visited by his brother, Daniel

Piercy, and by his mother. Dale Piercy told his brother that he had not been feeling well and had

been vomiting blood for three days.

33.     On information and belief, Mr. Piercy reported his condition to medical and

corrections personnel at Whiteside County Jail, but as of September 29, 2013, he had not been

given any medication other than the Zantac 75.

34.     Daniel Piercy returned to visit again three days later on October 2, 2013. On

information and belief, at that time, Mr. Piercy had still not been given any medication other than

the Zantac 75.

35.     On October 4, 2013, Dale Piercy was transferred to Stateville NRC. That same

day, Dale Piercy encountered Defendants Redman and Howard, both of whom failed to secure

medical attention for Mr. Piercy by a physician. Mr. Piercy reported to Defendant Redman that

he was taking medication, but Defendant Redman failed to take any action to ensure that Mr.
Piercy received that medication.

36.     Mr. Piercy's symptoms worsened over the next two weeks. He continued to vomit
blood, and at some point he began to lose control of his bowels. Mr. Piercy repeatedly told
correctional and medical personnel about his symptoms and his objectively serious medical
needs, but Stateville NRC personnel ignored Mr. Piercy's requests for medical treatment.

37.     Specifically, from October 4, 2013 through October 19, 2013, Mr. Piercy and
other prisoners in Housing Unit R (where Mr. Piercy was housed) submitted multiple written
requests for medical attention for Mr. Piercy. Mr. Piercy and other prisoners in the housing unit
also lodged numerous oral requests for medical care for Mr. Piercy to correctional and medical
staff who came into the housing unit. Despite this fact, Mr. Piercy received no medical care or
evaluation, or access to medical care or evaluation, at Stateville NRC until October 19, 2013.

38.     The IDOC Correctional Defendants were assigned to monitor prisoners in
Housing Unit R at Stateville NRC at various times between October 4 and October 19, 2013. The
IDOC Medical Defendants visited Housing Unit R at Stateville NRC at various times between
October 4 and October 19, 2013, or were responsible for reviewing written requests for medical
care submitted by prisoners in Housing Unit R at Stateville NRC.

39.     Around 12 p.m. noon on October 19, 2013, Mr. Piercy was finally brought by
wheelchair to the healthcare unit at Stateville NRC. By that time he was severely dehydrated, his
color was pallid, his skin was cold to the touch, and his blood sugar was 480. Medical personnel
were not even able to detect Mr. Piercy's pulse manually. Shortly after arriving in the healthcare
unit, Mr. Piercy lost consciousness and his vital signs dropped. Defendants Shah and Talbot,

both of whom were present in the healthcare unit at Stateville NRC when Mr. Piercy was brought there, failed to promptly call an ambulance for Mr. Piercy.

40.     By the time that the ambulance arrived, Mr. Piercy was not responsive. The ambulance transported Mr. Piercy to St. Joseph's Hospital, but he was pronounced dead shortly after arriving. An autopsy performed of Dale Piercy later determined that Mr. Piercy died of a gastrointestinal hemorrhage.

41.     As described more fully above, Defendants had notice of Dale Piercy's objectively serious medical need, and yet they failed to provide him with necessary medical attention, in violation of the Eighth Amendment to the United States Constitution.

## Count I – 42 U.S.C. § 1983
## Deliberate Indifference – Denial of Medical Care

42.     Each paragraph of this Complaint is incorporated as if restated fully herein.

43.     As described more fully above, Defendants had notice of Dale Piercy's medical needs and the seriousness of his medical needs, and knew the risk of harm to Dale Piercy if he did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide him with any proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

44.     As a result of the unjustified and unconstitutional conduct of Defendants, Dale Piercy experienced pain, suffering, emotional distress, injury, and ultimately, death.

45.     The misconduct alleged in this count was objectively unreasonable and was undertaken with malice, willfulness, and/or reckless indifference to the rights of others.

46.     Alternatively, Defendants were deliberately indifferent to Dale Piercy's objectively serious medical needs, and their actions were undertaken intentionally, with malice, willfulness, and/or reckless indifference to the rights of others.

15

47.     Dale Piercy's injuries were proximately caused by policies and practices of Defendants.

48.     By September and October 2013, Defendant Wilhelmi had notice of a widespread practice by employees at the Whiteside County Jail under which prisoners with serious medical conditions, such as Dale Piercy, were routinely denied access to proper or sufficient medication and medical diagnosis and treatment. It is common in the Whiteside County Jail to observe prisoners with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored.

49.     Specifically, there exists a widespread practice at Whiteside County Jail under which Jail employees, including correctional officers and medical personnel, commonly fail or refuse to: (1) properly examine a prisoner with a serious medical condition; (2) provide proper medication to a prisoner with a serious medical condition; (3) respond to prisoners who have requested medical attention or medication or asked to see a doctor; or (4) respond to prisoners who exhibit obvious signs of a serious medical condition or illness.

50.     This widespread practice is allowed to flourish because Defendant Wilhelmi, as Sheriff, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and control correctional officers and medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Dale Piercy. In this way, the Sheriff violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

51.     The above-described widespread practice, so well settled as to constitute de facto policy in the Whiteside County Sheriff's Department, were able to exist and thrive because governmental policymakers with authority over the same, namely, Sheriff Kelly Wilhelmi, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

52.     In addition, by September and October 2013, Defendant ACH had notice of a widespread practice by medical personnel at the Whiteside County Jail under which prisoners with serious medical conditions, such as Dale Piercy, were routinely denied access to proper or sufficient medication and medical diagnosis and treatment. It is common at Whiteside County Jail to observe prisoners with clear symptoms of serious medical illness, injury, or conditions who frequently ask for medical care or to see a doctor, whose requests are routinely delayed or completely ignored by medical personnel.

53.     Specifically, there exists a widespread practice at Whiteside County Jail under which medical personnel employed by ACH commonly fail or refuse to: (1) properly examine a prisoner with a serious medical condition; (2) provide proper medication to a prisoner with a serious medical condition; (3) respond to prisoners who have requested medical attention or medication or asked to see a doctor; or (4) respond to prisoners who exhibit obvious signs of a serious medical condition or illness.

54.     This widespread practice is allowed to flourish because Defendant ACH, which directs the provision of health care services at Whiteside County Jail, directly encourages and is thereby the moving force behind the very type of misconduct at issue by failing to adequately train and supervise medical personnel, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting

Dale Piercy. In this way, ACH violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

55.     The above-described widespread practice, so well settled as to constitute de facto policy in the Whiteside County Jail, were able to exist and thrive because governmental policymakers with authority over the same, namely, Defendant ACH, exhibited deliberate indifference to the problem, thereby effectively ratifying it.

56.     At all times relevant to the events at issue in this case, Defendant Wexford contracted with the IDOC to provide healthcare to prisoners housed at Stateville NRC, including Dale Piercy. As the provider of healthcare services to prisoners at Stateville NRC and other IDOC facilities, Wexford was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding the provision of medical care to prisoners in IDOC custody.

57.     Prior to the events giving rise to Plaintiff's lawsuit, Defendant Wexford had notice of policies and widespread practices by medical personnel at Stateville NRC pursuant to which prisoners like Dale Piercy with serious medical conditions were routinely denied medical care and evaluation, and access to medical care and evaluation. It is common at Stateville NRC to see prisoners with clear symptoms of serious medical conditions who repeatedly ask for medical care, and whose requests are routinely delayed or completely ignored. Despite knowledge of these problematic policies and practices, Defendant Wexford did nothing to ensure that prisoners at Stateville NRC received adequate medical care and access to medical care, thereby acting with deliberate indifference.

58.     Specifically, there exist policies or widespread practices at Stateville NRC pursuant to which: (1) medical staff fail to properly examine a prisoner with a serious medical

18

condition; (2) medical staff fail to respond or respond inadequately to prisoners who report taking medication; (3) medical and correctional staff fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (4) medical and correctional staff fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; and/or (5) medical staff fail to provide timely healthcare to prisoners.

59.     These policies and widespread practices were allowed to flourish because Defendant Wexford, which directs the provision of health care services at Stateville NRC, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Wexford violated Dale Piercy's and Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

60.     The above-described policies and widespread practices, so well settled as to constitute de facto policy at Stateville NRC, were able to exist and thrive because Defendant Wexford was deliberately indifferent to the problem, thereby effectively ratifying it.

61.     At all times relevant to the events at issue in this case, Defendants Ahmed, Funk, and Obaisi were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding medical care at Stateville NRC; the training of IDOC and Wexford staff at Stateville NRC on providing medical care to prisoners, and providing prisoners access to medical care; and the supervision of IDOC and Wexford staff at Stateville NRC who provided medical care and were responsible for providing prisoners access to medical care.

62.     Prior to the events giving rise to Plaintiff's lawsuit, Defendants Ahmed, Funk, and Obaisi had notice of policies and widespread practices by medical personnel at Stateville NRC pursuant to which prisoners like Dale Piercy with serious medical conditions were routinely denied medical care and evaluation, and access to medical care and evaluation. It is common at Stateville NRC to see prisoners with clear symptoms of serious medical conditions who repeatedly ask for medical care, and whose requests are routinely delayed or completely ignored. Despite knowledge of these problematic policies and practices, Defendants Ahmed, Funk, and Obaisi did nothing to ensure that prisoners at Stateville NRC received adequate medical care and access to medical care, thereby acting with deliberate indifference.

63.     Specifically, there exist policies or widespread practices at Stateville NRC pursuant to which: (1) medical staff fail to properly examine a prisoner with a serious medical condition; (2) medical staff fail to respond or respond inadequately to prisoners who report taking medication; (3) medical and correctional staff fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (4) medical and correctional staff fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; and/or (5) medical staff fail to provide timely healthcare to prisoners.

64.     These policies and widespread practices were allowed to flourish because Defendants Ahmed, Funk, and Obaisi, who oversaw the provision of healthcare to prisoners at Stateville NRC and were responsible for ensuring that prisoners have access to medical care, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendants Ahmed,

20

Funk, and Obaisi violated Dale Piercy's and Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

65.     The above-described policies and widespread practices, so well settled as to constitute de facto policy at Stateville NRC, were able to exist and thrive because Defendants Ahmed, Funk, and Obaisi were deliberately indifferent to the problem, thereby effectively ratifying it.

66.     At all times relevant to their involvement in this case, Defendants Williams or Lemke were responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures regarding prisoners' access to constitutionally adequate medical care at Stateville NRC; the training of IDOC staff at Stateville NRC on providing prisoners access to medical care; and the supervision of correctional and medical staff at Stateville NRC.

67.     Prior to the events giving rise to Plaintiff's lawsuit, Defendants Williams or Lemke had notice of policies or widespread practices by medical personnel at Stateville NRC pursuant to which prisoners like Dale Piercy with serious medical conditions were routinely denied medical care and evaluation, and access to medical care and evaluation. It is common at Stateville NRC to see prisoners with clear symptoms of serious medical conditions who repeatedly ask for medical care, and whose requests are routinely delayed or completely ignored. Despite knowledge of these problematic policies and practices, Defendants Williams or Lemke did nothing to ensure that prisoners at Stateville NRC received adequate medical care and access to medical care, thereby acting with deliberate indifference.

68.     Specifically, there exist policies or widespread practices at Stateville NRC pursuant to which: (1) medical staff fail to properly examine a prisoner with a serious medical condition; (2) medical staff fail to respond or respond inadequately to prisoners who report

21

taking medication; (3) medical and correctional staff fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (4) medical and correctional staff fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; (5) medical staff fail to provide timely healthcare to prisoners; and/or (6) correctional staff fail to respond or respond inadequately to prisoners who report that their written requests for medical care are being ignored.

69.     This widespread practice is allowed to flourish because Defendants Williams or Lemke directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Williams or Lemke violated Dale Piercy's and Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

70.     The above-described policies and widespread practices, so well settled as to constitute de facto policy at Stateville NRC, were able to exist and thrive because Defendant Williams or Lemke was deliberately indifferent to the problem, thereby effectively ratifying it.

71.     At all times relevant to the events at issue in this case, Defendant Tejeda was responsible for the creation, implementation, oversight, and supervision of policies, practices, and procedures pertaining to the duty by correctional officers to ensure that prisoners have access to adequate medical care; the training of IDOC staff at Stateville NRC; and the supervision of IDOC staff at Stateville NRC.

72.     Prior to the events giving rise to Plaintiff's lawsuit, Defendant Tejeda had notice of policies or widespread practices by medical personnel at Stateville NRC pursuant to which prisoners like Dale Piercy with serious medical conditions were routinely denied medical care

22

and evaluation, and access to medical care and evaluation. It is common at Stateville NRC to see prisoners with clear symptoms of serious medical conditions who repeatedly ask for medical care, and whose requests are routinely delayed or completely ignored. Despite knowledge of these problematic policies and practices, Defendant Tejeda did nothing to ensure that prisoners at Stateville NRC received adequate medical care and access to medical care, thereby acting with deliberate indifference.

73.     Specifically, there exist policies or widespread practices at Stateville NRC pursuant to which: (1) correctional staff fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (2) correctional staff fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; and/or (3) correctional staff fail to respond or respond inadequately to prisoners who report that their written requests for medical care are being ignored.

74.     These policies and widespread practices were allowed to flourish because Defendant Tejeda directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct. In this way, Defendant Tejeda violated Dale Piercy's and Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

75.     The above-described policies and widespread practices, so well settled as to constitute de facto policy at Stateville NRC, were able to exist and thrive because Defendant Tejeda was deliberately indifferent to the problem, thereby effectively ratifying it.

76.     At all times relevant to the events at issue in this case, Defendants Robinson, Brown-Reed, Martin, and Garcia were responsible for the creation, implementation, oversight,

and supervision of policies, practices, and procedures regarding medical care and access to medical care at Stateville NRC; the training of medical staff at Stateville NRC; and the supervision of medical staff at Stateville NRC.

77. Prior to the events giving rise to Plaintiff's lawsuit, Defendants Robinson, Brown-Reed, Martin, and Garcia had notice of policies or widespread practices by medical staff at Stateville NRC pursuant to which prisoners like Dale Piercy with serious medical conditions were routinely denied medical care and evaluation, and access to medical care and evaluation. It is common at Stateville NRC to see prisoners with clear symptoms of serious medical conditions who repeatedly ask for medical care, and whose requests are routinely delayed or completely ignored. Despite knowledge of these problematic policies and practices, Defendants Robinson, Brown-Reed, Martin, and Garcia did nothing to ensure that prisoners at Stateville NRC received adequate medical care and access to medical care, thereby acting with deliberate indifference.

78. Specifically, there exist policies or widespread practices at Stateville NRC pursuant to which: (1) medical staff fail to properly examine a prisoner with a serious medical condition; (2) medical staff fail to respond or respond inadequately to prisoners who report taking medication; (3) medical staff fail to respond or respond inadequately to prisoners who have requested medical attention or medication, or asked to see a doctor; (4) medical staff fail to respond or respond inadequately to prisoners who exhibit obvious signs of a serious medical condition; and/or (5) medical staff fail to provide timely healthcare to prisoners.

79. These policies and widespread practices were allowed to flourish because Defendants Robinson, Brown-Reed, Martin, and Garcia directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of medical staff, and failed to adequately punish and discipline prior instances of similar misconduct. In this

24

way, Defendants Robinson, Brown-Reed, Martin, and Garcia violated Dale Piercy's and Plaintiff's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

80.     The above-described policies and widespread practices, so well settled as to constitute de facto policy at Stateville NRC, were able to exist and thrive because Defendants Robinson, Brown-Reed, Martin, and Garcia were deliberately indifferent to the problem, thereby effectively ratifying it.

81.     At all times relevant to the events at issue in this case, Defendant Elberson was responsible for providing training to IDOC and Wexford staff at Stateville NRC, and for ensuring that IDOC and Wexford staff had sufficient training to provide access to adequate medical care. Prior to the events giving rise to Plaintiff's lawsuit, Defendant Elberson had notice that the IDOC Medical Defendants and the IDOC Correctional Defendants required initial or remedial training on providing access to medical care. Despite this knowledge, Defendant Elberson failed to provide any training or ensure that any training was provided to Defendants, thereby acting with deliberate indifference.

82.     Dale Piercy's and Plaintiff's injuries were caused by employees of the IDOC and Wexford, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

83.     Dale Piercy's and Plaintiff's injuries were also caused by employees of the Whiteside County Sheriff's Department and ACH, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

## Count II - 42 U.S.C. § 1983
## Conspiracy

84. Each paragraph of this Complaint is incorporated as if fully restated herein.

85. Defendants reached an agreement among themselves to deprive Dale Piercy of his constitutional rights and to protect one another from liability for depriving Dale Piercy of his rights, all as described in the various paragraphs of this Complaint.

86. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

87. The misconduct described in this Count was undertaken with malice, willfulness, and/or reckless indifference to the rights of others.

88. As a direct and proximate result of the illicit prior agreement, Dale Piercy's rights were violated and he suffered injuries, including pain, suffering, emotional distress, and death.

89. Dale Piercy's injuries were caused by employees of the Whiteside County Sheriff's Department, ACH, the IDOC, and Wexford, who acted pursuant to the policies and practices described more fully above.

## Count III - 42 U.S.C. § 1983
## Failure to Intervene

90. Each paragraph of this Complaint is incorporated as if restated fully herein.

91. As described more fully above, one or more Defendants had a reasonable opportunity to prevent the violation of Dale Piercy's constitutional rights as set forth above but failed to do so.

92. Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to Dale Piercy's rights.

26

93.     As a direct and proximate result of Defendants' misconduct, Dale Piercy's rights were violated and he suffered injuries, including pain, suffering, emotional distress, and death.

94.     Dale Piercy's injuries were caused by employees of the Whiteside County Sheriff's Department, ACH, the IDOC, and Wexford, who acted pursuant to the policies and practices described more fully above.

**Count IV – State Law Claim[1]**
**Intentional Infliction of Emotional Distress**

95.     Each paragraph of this Complaint is incorporated as if fully restated herein.

96.     In the manner described more fully above, by denying Dale Piercy medical attention and access to medical attention, Defendants engaged in extreme and outrageous conduct.

97.     In carrying out the actions described above, Defendants either intended to inflict or knew that there was a high probability that their conduct would cause severe emotional distress.

98.     Defendants' actions were undertaken with malice, willfulness, and reckless indifference to the rights of others.

99.     The misconduct described in this Count was undertaken by Defendants within the scope of their employment such that their employers, ACH and Wexford, are liable for their actions.

100.     As a direct and proximate result of misconduct, Dale Piercy suffered injuries including severe emotional distress and death.

---

[1]  Plaintiff acknowledges that some of his claims against some Defendants were dismissed by the Court's January 23, 2015 ruling. Dkt. No. 69. Because that dismissal was over Plaintiffs' objection, Plaintiff re-alleges those claims here, in an abundance of caution, to preserve the issues for appeal. *See Johnson v. Myers*, 109 Fed. App'x 792, 796 (7th Cir. 2004) (the Seventh Circuit has not yet decided whether a party must "formalistically replead a dismissed claim in an amended complaint").

## Count V – State Law Claim
## Wrongful Death

101.    Each paragraph of this complaint is incorporated as if restated fully herein.

102.    Plaintiff Aaron Piercy, as next-of-kin, claims damages for the wrongful death of Dale Piercy, and for the loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, and for Plaintiff's mental anguish caused by this loss, as well as for cremation expenses pursuant to 740 ILCS § 180/1, the Illinois Wrongful Death Act.

103.    As described more fully in the preceding paragraphs, the actions of the Defendants breached the duty of care owed to detainees in their care. They did so by negligently ignoring Dale Piercy's request for medical attention.

104.    Alternatively, the actions of the Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were conscious that an injury would probably result from the above-described course of action and recklessly disregarded the consequences of those actions.

105.    As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Dale Piercy suffered injuries, including death.

106.    Defendants' actions were undertaken willfully, wantonly, and with reckless indifference or conscious disregard for the safety of others.

107.    Defendants' actions proximately caused Dale Piercy great bodily harm and death, as well as great pain and suffering to Plaintiff Aaron Piercy.

## Count V – State Law Claim
## Survival Action

108.    Each paragraph of this Complaint is incorporated as if restated fully herein.

109.   Before his death as a result of Defendants' misconduct, Dale Piercy was forced to endure great conscious pain and suffering.

110.   Dale Piercy filed no action during his lifetime, but under the laws of the State of Illinois, this action survives and may be asserted by his Estate.

111.   Plaintiff Aaron Piercy, in his capacity as Administrator of the Estate of Aaron Piercy, claims damages for the conscious pain and suffering of Dale Piercy, pursuant to 755 ILCS § 5/27-6, commonly referred to as the Illinois Survival Act.

**Count VII – State Law Claim**
**Respondeat Superior**

112.   Each paragraph of this Complaint is incorporated as if restated fully herein.

113.   In committing the acts alleged in the preceding paragraphs, Defendants were employees and agents of Defendants ACH and Wexford, acting at all relevant times within the scope of their employment.

114.   Defendants ACH and Wexford are liable as principal for all torts committed by their agents.

**Count VIII – State Law Claim[2]**
**Indemnification**

115.   Each paragraph of this Complaint is incorporated as if restated fully herein.

116.   Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

Wherefore, Plaintiff, Aaron Piercy, as Administrator of the Estate of Dale Piercy, respectfully requests that this Court enter a judgment in his favor and against Defendants Kelly

---

[2]  By agreement, this claim was dismissed as against the individual IDOC defendants and ACH. Plaintiff is not attempting to revive the claim against those defendants.

Wilhelmi, Dan Williams, Julie Warkins, Advanced Correctional Healthcare, Inc., Tarry

Williams, Michael Lemke, Ricardo Tejeda, Nikki Robinson, Glen Elberson, Royce Brown-Reed,

Ester Martin, Cynthia Garcia, Joy Vanderweit, Valerie Christensen, Mary Jo O'Sullivan,

Khadeer Ahmed, Arthur Funk, Vipin Shah, Euaristo Aguinaldo, Paul Talbot, Saleh Obaisi,

Wexford Health Sources, Inc., Melinda Parra, Megan Pinas, John Loerop, Athena Rossiter,

Kristina Kashirsky, Candance Kaminski, Jennifer Encarnacion, Sampson Onwueyi, Jamie Pitts,

Donna Morris, Joanne Warren, Brandon Wilk, Rukiya Colone, Jennifer Coleman, Sandra

Gedminas, Nurse Liggins, Tiffany Utke, Nurse Lewondowski, Gerald Dimailig, Jennifer Asante,

Nurse Hunt, Amy Bartlett, Nurse Hardy, Marian Andrews, Linda Parisi, Lee Redman, Craig

Howard, Sarah Mays, Andria Bacot, David Barnes, Naveen Nagpal, Lorna Anders, Wendy

Olsen-Foxon, Rebecca Buczkowski, Kimberly Aye, Burnadine Damon, Maciej Tomczak, Bryan

Sullivan, Jason Weiner, Kenneth West, Alsheena Vaughn, Angela Smith, Stephen James, Darrin

Atkins, Clarence Egbe, Michael Simmons, Kayla Brown, Lindsay Neill, Lt. Brown, Randa

Uwainat, Johnny Frazier, Herbert Hughey, Kesha Alvarez, Jeffrey Clark, Robert Arndt, Sheila

Backstrom, Lataya Crawford, Lt. Kirk, Cesar Andrade, Rosalind Allen, Gayla Dickerson, Allan

Hopkins, Bartholomew Allen, Officer Blair, Derek Anderson, Felicia Walton, Marc Anastacio,

Officer Patterson, Phillip Martin, Stuart Maheia, Lt. Ware, Louis Kovach, Steven Selmon,

Andrew Strub, Aaron Winters, James Porter, David Seyller, Oliver Henderson, Pedro

Dominguez, Tulina Lindsey, Jeffery Nurse, Sergio Valle, Eddie Smith, Officer Raines, Robert

Peterson, Brian Kierczynski, Ricardo Sarabia, Officer D. Batts, Antoinette Hinton, Officer

Thomas, Konrad Boruta, Lt. Williams, Timothy O'Brien, Ghassan Hanna, Stephen Cornelius,

Dorsey Douglas, Patrick McCarthy, Lyndell Fola, Steven Erickson, Michael Buczkowski,

Anthony Davis, Ralph Burkybile, Officer Mitchell, Lt. John Doe Nos. 1–2, Officer John Roe

Nos. 1–5, awarding compensatory damages, including medical and cremation expenses, punitive

damages, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, Aaron Piercy, hereby demands a trial by jury pursuant to Rule 38(b) of the

Federal Rules of Civil Procedure on all issues so triable.

Dated: October 8, 2015

Respectfully submitted,

/s/ Sarah Grady
Sarah Grady
Attorney for Plaintiff

Michael Kanovitz
Vince Field
Sarah Grady
Gretchen E. Helfrich
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900