IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AARON PIERCY, as Administrator of the Estate of Dale Piercy,<br><br>    Plaintiff,<br><br>vs.<br><br>JULIE WARKINS, DAN WILLIAMS, and ADVANCED CORRECTIONAL HEALTHCARE, INC.,<br><br>    Defendants. | Case No. 14-cv-7398 |

**MOTION TO BIFURCATE OR TRIFURCATE THE TRIAL
PURSUANT TO FRCP 42**

NOW COME Defendants, JULIE WARKINS, DAN WILLIAMS, and ADVANCED CORRECTIONAL HEALTHCARE, INC. ("ACH"), by their attorneys, QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO, and for their Motion to Bifurcate or Trifurcate the Trial Pursuant to FRCP 42, state:

**INTRODUCTION**

ACH and its employees, Julie Warkins and Dan Williams, move this Court, pursuant to Federal Rule of Civil Procedure 42(b), to bifurcate or trifurcate the trial into three phases: (1) the individual Defendants' liability; (2) the issue of *Monell* liability; and (3) compensatory and punitive damages. Bifurcation or trifurcation promotes judicial economy, expedites the trial, avoids confusing the issues or misleading the jury, and avoids the prejudicial effects of inflammatory evidence being presented on a single

issue. If the motion is granted, evidence and argument pertaining to the *Monell* claim will be presented only if the case proceeds to phase 2, and evidence unique to the punitive damages issue such as financial information, will be presented only in phase 3. In the alternative, the court could bifurcate the trial and conduct trial on *Monell* claims and damages only if liability is established in phase 1.

Trifurcation will allow the jury to first address whether Dale Piercy's Eighth Amendment rights were violated, and if so, by whom. The jury can also consider the state law claims. If the jury concludes that Dale Piercy's rights were *not* violated and that the care at Whiteside County was appropriate, there is no need to consider Plaintiff's *Monell* claims or the issue of punitive damages.

### PLAINTIFF'S ALLEGATIONS AGAINST DEFENDANTS

The claims against the Defendants arise from Dale Piercy's eight and a half-day incarceration at the Whiteside County Jail. Piercy was transferred to the Illinois Department of Corrections and died 16 days later, in the custody of IDOC. Plaintiff alleges pursuant to 42 U.S.C. § 1983 that the Defendants were deliberately indifferent by failing to address his alleged complaints of vomiting blood. Fourth Amended Complaint [250] (hereafter, "Complaint") at ¶30-40. Plaintiff raised various state law claims based on the same allegation.

Plaintiff made a *Monell* claim against ACH, claiming broadly that ACH's express policies and procedures, widespread practices, and actions by final policymakers

2

encouraged, ratified and were the moving force behind the unconstitutional actions of its employees. Dkt. No. 250 at ¶¶ 53-55. Plaintiff's allegations include failing to adequately train and supervise medical personnel, failure to adequately punish and discipline prior instances of similar misconduct, failure to properly examine prisoners with serious medical conditions, failure to provide proper medications to prisoners with serious medical conditions, failure to respond to prisoner's requests for medical attention or medication, and failure to respond to prisoners who exhibit obvious signs of a serious medical condition or illness. *Id.*

Plaintiff's *Monell* allegations are dependent on a determination that employees of ACH, Defendants Warkins and Williams, engaged in constitutional violations. Dkt. No. 250 at ¶ 83. If Plaintiff fails to establish that the individual Defendants violated Dale Piercy's constitutional rights, his *Monell* claim against ACH fails as a matter of law. By trifurcating trial of the *Monell* claims until resolution of the claims against the individual Defendants, the parties and the Court will avoid undue prejudice to the individual Defendants and unnecessary and unduly burdensome litigation time, effort and costs.

Plaintiffs' proposed witness list includes numerous inmates who have no knowledge about Dale Piercy but complain about the care that they received in jail, presumably to support the *Monell* claim against ACH. Plaintiff's proposed exhibit list includes affidavits from even more inmates, voluminous records and documents pertaining to ACH's work at other jails and in other states, and a purported expert to

3

testify about the quality of medical care provided by ACH. The breadth of the *Monell* allegations against ACH favors separation.

Plaintiff seeks punitive damages against both the individual Defendants and ACH. However, the inclusion of punitive damages in a unified trial would not only unduly prejudice the Defendants, but also lead to a confusion of the issues for the jury. A jury faced with the breadth of prejudicial *Monell* evidence Plaintiff intends to introduce at trial and ACH's financial status will be hard-pressed to grant any of the Defendants, including the individual Defendants for which the *Monell* evidence and their employer's financial status are irrelevant, a fair trial. Separation of the punitive damages evidence from the claims against the individual Defendants and the *Monell* evidence is the only way to ensure that Defendants are afforded a fair trial.

## APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) provides trial courts the discretion to order a separate trial on one or more separate issues or claims "for convenience, to avoid prejudice, or to expedite and economize." Fed.R.Civ.P. 42(b). The Seventh Circuit outlined a three-step test for determining when trifurcation is appropriate:

First, the trial judge must determine whether separate trials would avoid prejudice to a party or promote judicial economy. Only one of these criteria — avoidance of prejudice or judicial economy— need be met before a court can order separation. Next, the court must be satisfied that the decision to bifurcate does not unfairly prejudice the

non-moving party. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) (internal citations omitted). As this framework indicates, the "decision to bifurcate centers on a balance of equities." *A.L. Hansen Mfg. Co. v. Bauer Prod., Inc.*, No., 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004). As such, "courts must evaluate each motion on its own merits," *Saunders v. City of Chicago*, 146 F. Supp. 3d 957, 968 (N.D. Ill. 2015), and "balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). "These factors are the primary concerns of Fed.R.Civ.P. 42(b), and '[w]hen weighing the competing equities under [that Rule], prejudice is the Court's most important consideration'." *Demouchette v. Dart*, 2011 WL 679914, at *6 (N.D. Ill. 2011) (quoting *Real v. Bunn–O–Matic Corp.*, 195 F.R.D. 618, 621 (N.D.Ill.2000)).

A trial court's decision to bifurcate or trifurcate will never be overturned absent "a clear showing of abuse." *Houseman*, 171 F.3d at 1121.

## ARGUMENT

### I. Plaintiff's *Monell* evidence introduces unfairly prejudicial and inadmissible evidence against Defendants Warkins and Williams.

Plaintiff's *Monell* evidence is related to the care and treatment of inmates other than Dale Piercy. However, Defendants Warkins and Williams, employees of ACH, were the only two medical professionals providing care at the Whiteside County Jail prior to and during Dale Piercy's incarceration. As a result, the large volume of *Monell* evidence

5

relied upon by the Plaintiff is irrelevant to the individual claims against Defendants Warkins and Williams, yet directly implicates the treatment provided by Defendants Warkins and Williams and would be unfairly prejudicial to them.

Under the Federal Rules of Evidence, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Furthermore, Federal Rule of Evidence 403 excludes evidence where the danger of "unfair prejudice, confusing the issues, [and] misleading the jury" substantially outweighs the probative value of relevant evidence. Fed. R. Evid. 403.

As demonstrated by the large number of exhibits Plaintiff cited to support his Response to Defendants' Motion for Summary Judgment and Statement of Additional Material Facts, the introduction of the evidence Plaintiff intends to use to support his *Monell* claim against ACH includes highly prejudicial, inflammatory, and likely inadmissible evidence that would deprive Defendants Warkins and Williams of the fair trial they would receive if the trial was trifurcated.

Plaintiff, to support his *Monell* claims against ACH, will seek to introduce prejudicial evidence and expert testimony regarding Defendants Warkins and Williams' medical care to other detainees, including the testimony of approximately fourteen *Monell* witnesses regarding the care provided primarily by Defendant Warkins. Dkt. No. 366 at ¶¶ 38-44. Additionally, Plaintiff will seek to admit evidence of prior lawsuits involving

6

ACH, Defendant Williams and Defendant Warkins, licensing and disciplinary records related to Defendant Williams and Defendant Warkins, medical grievances by inmates at the Whiteside County Jail, and highly incendiary documents related to ACH, such as inaccurate and inflammatory internet "exposes" regarding inmate treatment in other states, letters from the Department of Justice and documents from numerous lawsuits, that will invite the jury to tar Defendants Warkins and Williams with the same brush Plaintiff intends to use against ACH.

In *Awalt v. Marketti*, 75 F.Supp.3d 777 (N.D. Ill. 2014), a case also prosecuted by Plaintiff's counsel, the Court found that the extent to which the *Monell* evidence implicated the individual medical defendants required bifurcation because the risk of unfair prejudice was too great. The *Monell* evidence included testimony from 13 former detainees who alleged that they received insufficient medical care while under the care of the individual medical defendants, expert testimony that would allege that the medical provider provided deficient care to at least six other detainees during a period where the individual defendants were the only medical professionals working at the jail, numerous grievances and medical request forms submitted by detainees. *Id.* at 779. The Court stated that "[although bifurcation will clearly require several witnesses to testify twice, this inefficiency pales in comparison to the risk of unfair prejudice to [individual defendants] posed by the sheer magnitude of evidence about their past

actions that is relevant to the liability of the Entity Defendants." *Id.* at 780. Plaintiff's counsel is pursuing a similar strategy here.

In *Tanner v. City of Waukegan,* 2011 WL 686867, 10 (N.D. Ill. 2011), the Court found that the extent of the *Monell* evidence plaintiff sought to introduce against the City, including misconduct and disciplinary evidence and prior lawsuits against the City, required bifurcation because it could prejudice the individual defendants' ability to distinguish their own actions from the *Monell* evidence.

In *Demouchette v. Dart*, 2011 WL 679914, at *10 (N.D. Ill. 2011), the Court granted bifurcation, stating that "[t]he breadth and seriousness of the alleged deficiencies in these areas-all of which appear to be relevant to claims against the County—give rise to a serious threat of prejudice to the individual defendants if such evidence is introduced at their trial. Although the Court recognizes that not every detail of the report will necessarily be relevant or admissible at trial, it contains multiple instances of indifferent medical personnel and correctional officers."

Numerous courts have similarly held that the breadth of *Monell* evidence substantially risks unduly prejudicing individual defendants, who are unable to distinguish their own actions from the actions of the entity. *Carr v. City of N. Chicago*, 908 F. Supp. 2d 926, 934–35 (N.D. Ill. 2012) (extensive evidence concerning conduct of non-party officers, non-implementation of policies and broad problems in hiring, training, and supervising officers 'will contaminate the juror's minds" as to the liability

of the individual defendants); *Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. 2014) (bifurcation granted where the *Monell* evidence creates the perception that the entity routinely acts improperly, even if the officers acted properly in this case); *Castillo v. City of Chicago*, 2012 WL 1658350, at *6 (N.D. Ill. 2012); *Readus v. Dercola*, 2012 WL 1533167, at *4 (N.D. Ill. 2012).

In the instant case, the prejudice to the individual medical Defendants Warkins and Williams is similar to that in *Awalt* and more prejudicial than the evidence in the above cited cases. The *Monell* evidence Plaintiff seeks to introduce not only implicates non-party employees of ACH, as evidenced by the "exposes," lawsuit records and the letter from the Department of Justice, but also directly implicates the prior conduct of Defendants Williams and Warkins. The evidence at issue is prior bad act evidence that is expressly prohibited by Rule 404(b) and further limited by Rule 403.

In *Estate of Keys v. City of Harvey*, 1996 WL 34422, at *2 (N.D. Ill. 1996), the plaintiff sought to admit prior bad act evidence of the individual defendant to support his *Monell* claims. The Court granted bifurcation of the *Monell* claims, accepting defendant's argument that the disciplinary evidence used by plaintiff to support its *Monell* claim based on allegations of failure to train, discipline and supervise could not be admitted without compromising the rights of the individual defendant. *Id.* at *3.

## A. Prejudicial evidence of suits against Warkins and Williams

In support of his *Monell* claim against ACH, the Plaintiff is expected to seek to introduce 2,729 pages of lawsuits against ACH or its employees, including prior unsuccessful suits against Defendants Warkins and Williams. Plaintiff provided this information to his *Monell* expert, Dr. Evans, and included the documents in their draft exhibit list for trial. The evidence, as it pertains directly to Nurse Warkins, includes a Complaint against Nurse Warkins for deliberate indifference that alleges that she failed to report an inmate's injuries and failed to provide the inmate with medication while at the Whiteside County Jail. P03195-03204. As it pertains to PA Williams, the evidence includes two Complaints alleging deliberate indifference on the part of PA Williams while he was employed by another medical provider. P03134-03176; P03177-03194.

The suit against Defendant Warkins, cited by Plaintiff, was dismissed in favor of the Defendant at the summary judgment stage. The suits cited by Plaintiff against Defendant Williams were terminated in his favor at trial and at summary judgment, respectively. Tellingly, Plaintiff has failed to include the final docket page or order related to 13-cv-4049, wherein a jury found that Defendant Williams was not deliberately indifferent to the medical needs of an inmate.

These Complaints, by their very nature, are inflammatory, prejudicial, unproven, and irrelevant to the allegations against the individual Defendants in this case.

### B. Prejudicial evidence of Licensing Board Actions

Plaintiff will seek to introduce evidence of licensing board actions against Defendants Warkins and Williams to support his *Monell* claim against ACH. This evidence consists of 245 pages of licensing board actions against Defendants Warkins and Williams, including a 2009 investigation alleging that a patient died of pancreatitis after Defendant Williams failed to admit the patient (Investigation File, P010317-P010338); a 2012 investigation alleging unprofessional conduct on the part of Defendant Williams (Investigation File, P010342-P010348); a 2012 investigation alleging that Defendant Williams was a habitual drug user and that a patient died under his are as a result of his poor judgment (Investigation File, P010349-P010381); a consent order from the Illinois Department of Financial and Professional Regulation disciplining Defendant Williams (Consent Order, P010383-P010387); and a complaint and investigation alleging that Defendant Warkins administered the wrong medications to an inmate and failed to diagnose his medical conditions (Investigation File, P010403-P010435) .

The 2009 investigation resulted in a consent order being entered, wherein Defendant Williams was reprimanded and a modest fine was imposed, though no admission or finding of guilt, wrongdoing, or impropriety was made. The remainder of the cited investigations were closed by the Illinois Department of Financial and Professional Regulation without any discipline being imposed upon Defendants Williams or Warkins.

The licensing board actions, like the complaints, fall squarely under the purview of FRE 404(b) and 403, as the investigations contain highly inflammatory allegations which were never adjudicated or proven. Further, the evidence is, at most, only relevant to the *Monell* claims and not the individual claims against Defendants Warkins or Williams.

### C. Prejudicial *Monell* witness testimony and affidavits

Plaintiff disclosed at least eleven individual *Monell* witnesses, whose live testimony testimony or affidavits he will seek to admit at trial to support his *Monell* claims against ACH. These witnesses criticize the care they were provided at the Whiteside County Jail, thereby implicating the treatment provided by Defendants Williams and Warkins. P16992-P17022. The deposition testimony and affidavits are prior bad act evidence that is prohibited by Rule 404(b). Admission of such testimony in a trial involving Defendants Williams and Warkins would be so prejudicial as to deprive them of a fair trial on the merits of their care of Piercy.

### D. Prejudicial opinions of Dr. Evans regarding inmates allegedly denied care by Warkins, Williams, and ACH

Plaintiff intends to support his *Monell* claim against ACH with the opinions of Dr. Evans. Dr. Evans purports to have conducted a "system-wide review of ACH's delivery of medical care at Whiteside County." Pl's Resp. MSJ at 9; Dkt. 364. He opines that the medical providers at the Whiteside County Jail failed to properly treat 25 percent of inmates, that a "substantial" number of inmates were entirely denied medical care, that Defendants Warkins and Williams operated outside the scope of their professional

credentials, that Nurse Warkins regularly delayed providing health assessments to inmates and that in January 2012 Nurse Warkins missed a medication order from the doctor. Dkt. 366, Ex. 28. This testimony is not relevant to the claims against Defendants Warkins and Williams regarding their care of Dale Piercy, is inadmissible prior bad act testimony, and inclusion of such incendiary testimony would deprive Defendants of a fair trial.

### E. Prejudicial evidence of inmate medical grievances regarding care provided by Warkins, Williams, and ACH

In support of his *Monell* claims against ACH, Plaintiff intends to introduce inmate complaints and grievances alleging deficient care by the medical providers at Whiteside County, Defendants Warkins and Williams. The documents, with the names of the inmates redacted, are without context or medical records associated with them. Whiteside 1049-54. They are inflammatory, unproven, and irrelevant to the claims brought against Defendants Warkins and Williams.

## II. Admission of punitive damages evidence concurrent with the individual liability or *Monell* evidence is inherently prejudicial to Defendants.

Bifurcation or trifurcation of the trial is necessary, as litigation of the punitive damages claim will permit Plaintiff to seek to introduce prejudicial evidence regarding the Defendants' wealth, evidence that is neither necessary nor relevant to the individual or *Monell* liability phases of the trial.

In *Fetzer v. Wal-Mart Stores, Inc.*, 2016 WL 6833912, at \*5 (N.D. Ill. 2016), this Court recognized that a jury sympathetic to a plaintiff's severe injuries may improperly consider damages evidence when determining liability. In that case, the Court bifurcated the liability and damages portions of the trial to avoid undue prejudice to the defendant. In the instant case, the jury will be presented with allegations that the Defendants were the cause of Dale Piercy's death from gastrointestinal bleeding. Plaintiff's theory of the case depends upon graphic and sympathetic testimony that Piercy was vomiting blood and suffering at the hands of the penny-pinching Defendants until he died. Permitting Plaintiff to elicit such testimony, followed by the introduction of the evidence of Defendants' wealth, practically begs a jury to let sympathy guide their decision. As this Court stated in *Fetzer*, "maximizing the separation of liability and damages presents the best means to obviate unfair prejudice to Defendant." *Id.*

The risk of prejudice to the Defendants, after hearing of Dale Piercy's death, the breadth of the *Monell* evidence, and the relative wealth of ACH is far too great to disallow trifurcation. The wealth of the Defendants is wholly irrelevant to the jury's determination of individual liability and *Monell* liability. *Id.; See also Isbell v. John Crane, Inc.*, 74 F. Supp. 3d 893, 898 (N.D. Ill. 2014) (separating trial into two phases to avoid prejudicial effect of defendant's financial status being introduced during liability and compensatory damages phase). Without trifurcation, any one of the 12 members on the

14

jury could easily and improperly consider ACH's wealth and alleged institutional misconduct when determining the issue of claims against the individual Defendants.

Furthermore, it defies belief that a jury presented with the otherwise inadmissible, irrelevant, and prejudicial aspects of each piece of *Monell* or punitive damages evidence would only use it for its intended and specific purpose against the intended and specific defendant it is properly directed towards.

### III. Litigation and judicial economy would be served by trifurcation.

The trifurcation of *Monell* claims and punitive damages evidence avoids "the needless costs and burdens of a second trial, as well as, but not limited to, the waste of valuable time and resources of the court." *Treece v. Hochstetler*, 213 F.3d 360, 365 (7th Cir. 2000). As it currently stands, the September trial of this matter will take two or three weeks of juror time, and consist of legally and factually complex arguments regarding individual liability, *Monell* liability and damages. Defendants intend to introduce significant evidence concerning the alleged misconduct of the entities and individuals who were actually at fault. The Wexford and IDOC Defendants played various roles in the housing, treatment, and care of Dale Piercy in the 16 days after he left Whiteside County. Much of the evidence concerning this conduct is not relevant to Plaintiff's *Monell* claim, but rather addresses the core issue of causation.

Due to the large volume of *Monell* evidence Plaintiff seeks to introduce, much of the evidence will not be relevant to the relatively simple claims directed towards Defendants Warkins and Williams. Jurors may hear additional fact and expert

15

testimony about lawsuits brought against ACH from across the country, the individual Defendants' disciplinary histories, other inmates' allegations of inadequate medical care, the jail and ACH's written policies and practices on various topics, training of ACH employees and correctional officers, the sufficiency of staffing at the Jail, articles documenting care at other jails, ACH financial records, records from other jails with whom ACH contracts, and a variety of other topics suggested by Plaintiff's far-ranging and all-inclusive *Monell* claims. Furthermore, the *Monell* claims require extensive motions in limine, limiting instructions, and complex jury instructions.

Hearing evidence about the conduct of other parties, in addition to the mountain of *Monell* evidence Plaintiff seeks to introduce, could confuse the jury, add greatly to the amount and type of factual matters the jury would have to try to remember, and perhaps could cloud the jury's judgment as to whether Plaintiff has proved his claims against Defendants. If the court trifurcates the trial, Plaintiff's *Monell* evidence would be saved for the second phase, where the jury's attention will be fully focused on the issue. Trifurcation will thus allow the jury to tackle two formidable tasks – individual liability and *Monell* liability - one at a time.

Additionally, trifurcation would mean that the Court would preside over a shorter, less complex, and focused trial on the issue of whether Defendants Warkins and Williams provided adequate treatment to Dale Piercy and if not, whether the alleged failure was a proximate cause of Dale Piercy's death. The *Monell* phase of the trial

would be equally streamlined and the specter of an unfair trial for the individual Defendants would be removed. The separation of the issue of punitive damages is also economical because it would eliminate the need to present evidence of Defendants' financial condition at all, or could eliminate the need to present such evidence for Defendants against whom no liability is found.

## IV.  Conclusion

The risk of undue prejudice is too great to deny bifurcation or trifurcation. The very nature and extent of the evidence Plaintiff intends to introduce to support his *Monell* and punitive damage claims requires trifurcation in order to afford Defendants Warkins and Williams a fair trial. Trifurcation also avoids the unnecessary and unduly burdensome litigation time, effort and costs associated with *Monell* claims.

WHEREFORE, Defendants, JULIE WARKINS, DAN WILLIAMS, and ADVANCED CORRECTIONAL HEALTHCARE, INC., pray that Court enter an Order granting this motion, trifurcating the trial of this matter, or, in the alternative, bifurcating the case, and for such other and further relief as the Court deems just.

JULIE WARKINS, DAN WILLIAMS, and
ADVANCED CORRECTIONAL HEALTHCARE, INC.,
Defendants


By: _____*s/Peter R. Jennetten*_____
                      Peter R. Jennetten
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO


Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
Christina E. Cullom (Illinois Bar No. 6305688)
ccullom@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL  61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on **August 2, 2017**, I electronically filed this **MOTION TO BIFURCATE OR TRIFURCATE THE TRIAL PURSUANT TO FRCP 42** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Michael Kanovitz<br>michael@loevy.com<br>Vincenzo Field<br>vince@loevy.com<br>Gretchen E. Helfrich<br>gretchen@loevy.com<br>Sarah Grady<br>sarah@loevy.com<br>Scott Rauscher<br>scott@loevy.com<br>Loevy & Loevy<br>311 N. Aberdeen St.<br>3rd Floor<br>Chicago, IL  60607 | **Attorneys for Plaintiff** |
| Ryan M. Henderson<br>rhenderson@batescarey.com<br>BatesCarey LLP<br>191 N. Wacker Dr.<br>Suite 2400<br>Chicago, IL  60606 | **Local Counsel for Julie Warkins,<br>Dan Williams, and Advanced Correctional<br>Healthcare, Inc.** |

*s/Peter R. Jennetten*
Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL  61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

4837-8762-1189, v. 3