IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AARON PIERCY, as Administrator of
the Estate of Dale Piercy,

               Plaintiff,

   vs.

JULIE WARKINS, DAN WILLIAMS,
and ADVANCED CORRECTIONAL
HEALTHCARE, INC.,

               Defendants.

Case No. 14-cv-7398

## DEFENDANTS' MOTIONS *IN LIMINE*

NOW COME Defendants, JULIE WARKINS, DAN WILLIAMS, and

ADVANCED CORRECTIONAL HEALTHCARE, INC., by their attorneys, QUINN,

JOHNSTON, HENDERSON, PRETORIUS & CERULO, and for their Motions *in Limine*,

state:

### First Motion *in Limine* – DOJ/Agency Involvement at Other Jails

Plaintiff intends to introduce evidence of involvement by the Department of

Corrections and various federal and state agencies in jails serviced by Advanced

Correctional Healthcare. This includes Pl. Exs. 105, 106, 110, 130,150. Such evidence

should be barred as it consists of hearsay reports and correspondence, is irrelevant and

unduly prejudicial to the Defendants. Fed. R. Evid. 401, 403, 801, 802. Plaintiff's expert

regarding correctional healthcare, Dr. Evans, stated in his deposition testimony that his

opinions did not rely upon Department of Justice reports (Evans dep. at 99) and that he did not look at the records of other jails staffed by ACH (Evans dep. at 100).

Plaintiff has referred to evidence of DOJ involvement at Grant County Detention Center in Kentucky. Such evidence is hearsay, irrelevant, and unduly prejudicial. The documents, which include investigations, findings and determinations leading up to and following a 2009 settlement agreement between the Department of Justice and Grant County Detention Center, involve incidents that occurred prior to ACH entering into a contract with Grant County in 2011. The Department of Corrections did not take any action against ACH and inclusion of such evidence would unfairly suggest to the jury that ACH was responsible for the conditions.

Similarly, Plaintiff may introduce emails documenting DOJ involvement in the Jefferson County, Alabama. The Department of Corrections did not take any action against ACH and inclusion of such evidence would unfairly suggest to the jury that ACH was responsible for the conditions that prompted DOJ involvement.

An April 2014 report from the Department of Homeland Security Office of Detention Oversight for a jail in Kenosha County, Wisconsin mentioned only dental screenings that were not in compliance with Immigration and Customs Enforcement (ICE) 2000 National Detention Standards. The Office of Detention Oversight took no action against ACH and there is no evidence that the dental screenings were not in accordance with the constitution. Their review is based upon the ICE 2000 National Detention Standards

which are not relevant to the instant case and would serve to further confuse the jury as to the appropriate standard of care.

A 2014 report for a jail in Morgan County, Missouri, reported deficiencies with medical staff, though ACH did not contract to provide the medical staff.

Plaintiff intends to introduce a report purportedly authored by the Oklahoma State Department of Health involving an unnamed detention center in Oklahoma. All personal and medical information was redacted. The report is heavily redacted, including all personal and medical information. ACH is not identified in the report and no action was taken against ACH.

Plaintiff's evidence is inadmissible hearsay and to the extent that any of the records fall within a hearsay exception, the evidence is irrelevant to the claims against the Defendants and admission of the records would be unduly prejudicial.

## Second Motion *in Limine* –
## Professional Discipline of Dan Williams and Julie Warkins

Defendants anticipate that Plaintiff may seek to introduce evidence regarding discipline imposed (or not imposed) upon Defendants Dan Williams and Julie Warkins by the Illinois Department of Financial & Professional Regulation ("IDFPR"). Evidence pertaining to this is irrelevant and substantially more prejudicial than probative.

The IDFPR records pertaining to Dan Williams consist of his credentialing records and three closed investigation files. Two investigations initiated in 2012 were closed without any action being taken against Dan Williams. The third investigation arose out

of the settlement of a 2009 lawsuit. The IDFPR and Williams entered into a 2011 Consent Order imposing discipline, but there were no findings of a violation of the Illinois Physician Assistant Act and the parties to the Consent Order agreed that the Order may not be utilized in any other proceeding. The discipline did not arise out of or during Williams' employment with Advanced Correctional Healthcare, the allegations and discipline are remote in time, there was no finding of negligence or professional misconduct, and there were no admissions of guilt.

The IDFPR records pertaining to Julie Warkins consist of her credentialing records and a 2015 investigation that was closed at intake for insufficient evidence.

Evidence regarding these incidents is not relevant and should be excluded pursuant to Fed.R.Evid. 401 and 404. It is also substantially more prejudicial than probative and could confuse or mislead the jury. It should therefore also be excluded pursuant to Fed.R.Evid. 403; *Snipes v. Illinois Dept. of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002) (affirming exclusion of discipline of other correctional officers in Title VII claim because other officers were not similarly situated); *Mowrey v. City of Fort Wayne*, 2013 WL 6512664, at *7 (N.D. Ind. 2013) (court excluded "prior criminal and civil actions, citizen complaints, or discipline taken against Sergeant Taylor or other testifying officers" pursuant to Fed.R.Evid. 404 and 402).

## Third Motion *in Limine* – Testimony of Inmates Not with Piercy

Defendants anticipate that Plaintiff will attempt to introduce testimony from inmates incarcerated at the Whiteside County Jail who claim that they were denied medical treatment at the jail. Plaintiff has identified the following inmates who were not present with Dale Piercy: Dominque Davis, Dawson Dickinson, Alana Gaffey, Jennifer Hall, Shanti Kendrick, Donnie Latham, Alphonso Pendelton, Troy Plemmons, Gerry Rohn, Jacob Wetzell, and Kelly Williamson. The 11 inmates Plaintiff identified as witnesses are expected to testify that either they received unsatisfactory care at Whiteside County, that they witnessed others receive unsatisfactory care or both.

The testimony of these witnesses should be barred because the testimony is not relevant to the claims against Defendants Warkins and Williams, includes hearsay testimony, and would amount to allowing lay witnesses provide expert testimony regarding the adequacy of their care, and is inadmissible prior bad act evidence. Fed. R. Evid. 402, 403, 701, 802.

Furthermore, the testimony would deny the Defendants, particularly the individuals, a fair trial, as the probative value is substantially outweighed by the prejudicial and misleading effect on the jury. Each of the 11 inmates' testimony would amount to an expert-less mini-trial regarding whether the care they received amounted to deliberate indifference to a serious medical need. The testimony is only relevant if it is evidence of deliberate indifference, so for each witness the parties will dispute

whether, for example, an alleged policy of not allowing pregnant inmates to get extra food and a mat until they had seen a nurse was deliberate indifference to a serious medical need. Plaintiff failed to identify a qualified expert to determine whether any one of these inmates received unconstitutional care pursuant to ACH policies. Dr. Evans, Plaintiff's corrections expert, did not rely upon the inmate's affidavits regarding their care to form his opinions. Evans dep. at 138.

This Court should bar the testimony of the 11 inmates who were not at WCJ with Piercy, pursuant to FRE 401, 403, 404, 701, 801 and 802.

### Fourth Motion *in Limine* – Articles and Other Internet Postings

Plaintiff is expected to attempt to introduce internet postings and news stories pertaining to Advanced Correctional Healthcare's work in other jails, particularly jails outside of Illinois. Pl. Ex. 152. Newspaper paper articles and internet postings are inadmissible hearsay. *Eisenstadt v. Centel Corp.,* 113 F.3d 738 (7th Cir, 1997) (finding that Chicago Tribune article was inadmissible hearsay). Additionally, they are irrelevant to the claims against the Defendants and their probative value is substantially outweighed by their prejudicial effect.

Of the seven articles identified by Plaintiff, only two of the articles or posts were published prior to Dale Piercy's incarceration at Whiteside County Jail. Of the two articles posted to the internet prior to Piercy's incarceration, neither post involves medical care provided by ACH in Illinois, and in one of the articles, ACH is not even

mentioned. The June 2012 article from Minnesota merely recites the allegations in a Complaint, but fails to state the outcome. Two posts are completely undated.

The majority of these online postings lack any indicia of trustworthiness, as they were posted to agenda-based websites and fail to report the outcomes of the lawsuits. Not even Plaintiff's expert, Dr. Evans, relied upon these articles to form his opinions. Evans dep at 92.

In *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir, 1997), the plaintiff sought to admit a Chicago Tribune article as evidence because it purportedly contained statements by the defendant. The Seventh Circuit held that the article was inadmissible hearsay and stated that "[i]t would be an abuse of discretion to admit the article as evidence because of the doubt about what it means and about whether it is an accurate report of what Centel said and because the author was available to be deposed, or give an affidavit, and clear up these questions." *Id.*

In the instant case, the internet articles and posts are inadmissible hearsay, not trustworthy, not authenticated, and most of them post-date Dale Piercy's death. They should be barred pursuant to FRE 401, 402, 802, and 901.

### Fifth Motion *in Limine* – Other Inmates' Affidavits

Plaintiff disclosed and may attempt to introduce affidavits and similar information from 12 inmates who were at Whiteside County Jail but not with Dale Piercy. The affidavits are inadmissible hearsay. Fed. R. Evid. 801, 802. Such affidavits are also

irrelevant to the care provided to Dale Piercy, improper propensity evidence, and unduly prejudicial. Fed. R. Evid. 402, 403, 404.

Furthermore, claims of poor medical treatment do not, without more, amount to a federal constitutional violation, making the testimony irrelevant to the claims brought against ACH. *Steele v. Choi,* 82 F.3d 175, 176 (7th Cir. 1996) ("not every instance of poor medical treatment amounts to a federal constitutional violation."). Plaintiff should be prohibited from attempting to introduce this information through other witnesses, including their expert, Dr. Evans. Dr. Evans testified that he did not rely upon these affidavits or information contained therein to form his opinions. Evans dep. at 138.

### Sixth Motion *in Limine* – Timing of Nursing Assessments

Plaintiff should be prohibited from arguing or implying that detainees, including Dale Piercy, should be routinely seen by a nurse before 14 days. Illinois jail regulations require that an inmate be seen by a medical staff member for an assessment within 14 days. 20 Ill. Adm. Code. 701.90(c)(3)("All detainees confined shall be given a medical screening by a medical doctor, a physician assistant, a nurse practitioner, a registered nurse or a licensed practical nurse within 14 days after confinement.").

Dr. Evans attempted to assert at his deposition that intake screenings, which are typically performed during the booking process by correctional officers, must be performed by nurses or other medical staff. Evans dep. at 109-110. He also asserted that detainees should be seen by a nurse within three days. Evans dep. at 168. He eventually

acknowledged that this was his preference, but not based upon any regulation or standard. Evans dep. at 117-18; 122-123; 168-169. Even the NCCHC guidelines, which are more stringent than the standard of care, do not require an earlier screening by a nurse. Evans dep. at 117. NCCHC guidelines, which again are more stringent than the standard of care requires, permit trained correctional officers to perform intake screenings. Evans dep. at 112-13. To do otherwise would require every jail, even small jails like Whiteside County, to have 24-hour nursing solely for the purpose of screening incoming inmates.

### Seventh Motion *in Limine* – Violations of Rules or Statutes

Plaintiff should not be permitted to argue that Defendants were deliberately indifferent because they failed to abide by any statute, administrative code, rule, or policy. Evidence of such a violation is not a violation of the Constitution. *Thompson v. City of Chicago,* 472 F.3d 444, 455 (7th Cir. 2006). Such rules also do not establish the standard of care, and inclusion of such evidence is unduly prejudicial. Fed. R. Evid. 402, 403. See, *Gevas v. McCann*, 2014 WL 292620194 at *3, Fed. R. Evid. Serv. 1068 (N.D. Ill) (J. Guzman) ("Furthermore, actual evidence of IDOC regulations which imply that root canal treatment was available is likely to confuse the jury and may lead jurors to believe that what IDOC regulations allowed is what plaintiff was constitutionally entitled to or what the standard of care required. Neither of these conclusions is accurate.").

Such evidence is therefore both irrelevant and substantially more prejudicial than probative, as it has a tendency to mislead the jury regarding the appropriate standard to be applied.

In particular, Plaintiff has asserted that ACH violated WCJ policy pre-dating ACH's contract stating that a registered nurse should be responsible for care at the jail. Plaintiff's Motion for Summary Judgment, Exhibit 31, Fact 34. Prior to ACH, the jail only had a nurse. With ACH, care was overseen by higher level practitioners, including registered nurses, physician assistants, and medical doctors at ACH. The violation of such a policy does not constitute deliberate indifference. *Thompson v. City of Chicago,* 472 F.3d 444, 455 (7th Cir. 2006).

Plaintiff also may introduce the NCCHC (National Commission on Correctional Healthcare) Jail standards and testimony regarding such standards. Evans dep. at 36. Jails are not required to be certified to NCCHC standards and Whiteside County was not certified. The standards are aspirational and not a standard of care, as plaintiffs expert, Dr. Evans, acknowledged. Evans dep. at 113.

In *Thompson v. City of Chicago,* 472 F.3d 444, 455 (7th Cir. 2006), plaintiffs argued that the Chicago Police Department's general orders regarding the use of force were relevant and should be admitted. The Seventh Circuit disagreed, stating that "this court has consistently held that '42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police

practices.' [internal citations omitted]. In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established.". *Id.* at 454. The Court held that the exclusion of the policies was appropriate as the policies were both irrelevant and likely to cause unfair prejudice and jury confusion as to the issues. *Id.*

### Eighth Motion *in Limine* – Training of Correctional Officers

Plaintiff should be barred from introducing any evidence or argument pertaining to a lack of training of Whiteside County correctional officers. This claim was not raised in the Fourth Amended Complaint, which referred only to training of medical staff. Plaintiff's allegation against ACH states as follows:

> Defendant ACH, which directs the provision of health care services at Whiteside County Jail, directly encourages and is thereby the moving force behind the very type of misconduct at issue *by failing to adequately train and supervise medical personnel*, and by failing to adequately punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Dale Piercy. In this way, ACH violated Dale Piercy's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

Fourth Amd. Compl. at ¶ 54 (emphasis added). It is axiomatic that Plaintiff cannot amend his complaint during the course of summary judgment briefs, which was the first time Plaintiff raised a failure to train correctional officers claim against ACH. *See Auston v. Schubnell,* 116 F.3d 251, 255 (7th Cir. 1997) (holding that it "is too late in the day to be adding new claims" at the summary judgment stage); *Teall v. City of Chi.,* 986 F.Supp. 1098, 1101 (N.D.Ill.1997)("It is well settled within the Seventh Circuit that a

plaintiff cannot amend his complaint with a later filed brief."). The claim is therefore waived. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012)

The argument is also inappropriate because it is the Sheriff's duty to train officers, not ACH's. Def. MSJ Ex. 45 (ACH Contract) [Dkt. 346].

## Ninth Motion *in Limine* – Expert Testimony on Constitutional Standards

Plaintiff disclosed a number of experts to testify regarding the care provided at the Whiteside County Jail and ACH's policies in general. Their reports use the term "deliberate indifference" and indicate that they intend to testify that the conduct of the Defendants was "deliberately indifferent" to Dale Piercy's constitutional rights. However, that is not an appropriate subject for expert testimony. While the experts are arguably qualified as medical professionals and can testify regarding the standard of care for a medical professional, they cannot testify to the constitutional standard or whether that standard was violated. Doctors are not constitutional scholars.

Defendants ask this Court to bar expert opinions regarding the constitutional standard and whether it was violated. Expert testimony that contains a legal conclusion that determines the outcome of a case is inadmissible. *See RLJCS Enterprises, Inc. v. Professional Ben. Trust Multiple Employer Welfare Ben. Plan and Trust,* 487 F.3d 494, 498 (7th Cir. 2007)(Easterbrook, C.J.); *Good Shepherd Manor Found., Inc. v. City of Momence,* 323 F.3d 557, 564 (7th Cir. 2003).

In *Haley v. Gross,* 86 F.3d 630, 645 (7th Cir. 1996), the Seventh Circuit upheld the trial court's decision to forbid a corrections expert to testify to legal standards or what constitutes deliberate indifference, but did allow the expert to testify to what he believed the proper response to be in a given situation. *Egebergh v. Village of Mount Prospect,* 2004 WL 856437, at *2–3 (N.D.Ill.2004) (affirming limitation of expert testimony at trial and noting "[w]hether defendants demonstrated deliberate indifference, however, was a question for the jury alone.").

## Tenth Motion *in Limine* – Trial Publicity

Plaintiff's counsel previously posted an article regarding Advanced Correctional Healthcare on its corporate blog. Defendants filed a motion, and the Court ordered Plaintiff's counsel to remove that posting. It has been taken down. Defendants are concerned that Plaintiff may make similar postings, a live blog, tweet, or other internet or social media postings pertaining to this case during the trial. Such postings would be easily accessible to jurors by searching for names related to this matter.

Illinois Rule of Professional Conduct 3.6, which governs "Trial Publicity," states that a lawyer may not make any extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication that would "pose a serious and imminent threat to the fairness of an adjudicative proceeding in the matter."

13

Despite admonitions, jurors frequently undertake investigations of the parties and witnesses. To minimize the risk of unfair and unknown prejudice, Plaintiff and his counsel should be prohibited from making any such internet blog, social media, or similar postings pertaining to the trial before a verdict is reached.

### Eleventh Motion *in Limine* – Lay Medical Opinions

Plaintiff may attempt to introduce lay medical opinions both from Plaintiff's family members regarding Dale Piercy and from inmates who may be asked to testify regarding their own medical condition or treatment or that of other inmates. Both should be barred from doing so. Lay witnesses are limited to opinions which are not based upon scientific, technical, or other specialized knowledge. Fed. R. Evid. 701.

Though lay witnesses are permitted to testify to medical symptoms, as they perceived them, the diagnosis and cause of a disease, defect or medical condition is a technical medical and legal determination that requires expert testimony. *U.S. v. Cravens,* 275 F.3d 637, 640 (7th Cir. 2001); *see also Korte v. Exxonmobil Coal USA, Inc.,* 164 Fed. Appx. 553, 556 (7th Cir. 2006) (holding that expert testimony is needed to establish causation when the medical effects are not within the understanding of the average person); *Goffman v. Gross,* 59 F.3d 668, 672 (7th Cir. 1995) (finding lay testimony insufficient to establish claim that secondhand smoke caused his symptoms).

A lay witness may not "give any complex medical diagnoses or opine on any long term medical conditions." *Cooper v. Dailey*, 2012 WL 1748150, at *7 (N.D. Ill. 2012).

Plaintiff should be barred from eliciting lay witness testimony regarding the cause of Dale Piercy's alleged symptoms, as the link between the symptoms and their cause is not obvious to a layperson. *Torres v. City of Chicago*, 2015 WL 12843889, at *8 (N.D. Ill. Oct. 28, 2015) (citing *Denton v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2005 WL 1459203, at *5 (N.D. Ill. 2005). In the instant case, it is evident that the parties' retained experts disagree as to the cause of Dale Piercy's death and whether the alleged symptoms exhibited by Piercy at Whiteside County Jail were related to his demise at Stateville. Any opinions elicited by lay witnesses regarding the diagnosis and cause of Dale Piercy's symptoms are outside of their purview as lay witnesses.

Additionally, Plaintiff should be barred from eliciting testimony from lay witnesses regarding the diagnosis, treatment, appropriate or preferred courses of treatment, standards of care, or perceived deviations from the standard of care, as it relates to their care or Dale Piercy's care at the Whiteside County Jail.

## Twelfth Motion *in Limine* – Prior Litigation

Plaintiff disclosed in discovery court records pertaining to litigation between Dr. Norman Johnson, CEO of Advanced Correctional Healthcare, and Health Professionals, Ltd., a corporation with which he was associated prior to founding ACH. That litigation related to their former business relationship and enforcement of a non-compete agreement. It is not relevant to any issue in this case. Moreover, the litigation concluded many years ago in 2003, making it remote in time, irrelevant, and unduly prejudicial.

See, *Health Professionals Ltd. v. Johnson*, 339. Ill.App.3d 1021, 791 N.E.2d 1179 (3rd Dist. 2003) (disclosed by Plaintiff herein as P000553-567).

### Thirteenth Motion *in Limine* – Motion to Bar Use of Other Suits

Plaintiff produced thousands of pages of Docket Entries, Complaints, Answers, Notices of Appearance, and Notices of Removal filed against Advanced Correctional Healthcare, Dan Williams, Julie Warkins, and other non-party employees of ACH and various non-parties from jurisdictions across the United States. Pl. Exs. 157 ("lawsuit documents") and 158 ("ACH Indiana Claims Settlement").

The allegations in a complaint are not evidence. A plaintiff must prove his claims. *Garrett v. Dintelman*, 2013 WL 4495663, at *3 (S.D. Ill. 2013) ("pleadings are not evidence, especially an Answer that is not in the form of an affidavit.".

The records are not relevant to the claims against ACH, as the records fail to disclose how the cases were resolved. Not a single record contains a finding or admission of fault, deliberate indifference, or unconstitutional policies. Admission of only Complaints, Answers and the like causes undue prejudice to the Defendants, who are forced to defend each complaint, explain the outcome, and fight an uphill battle of prejudice. The jury may get the mistaken impression that the mere existence of litigation against Defendants means that they did something wrong.

In *Goldberg* v. *401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 1499043, at *2 (N.D. Ill. Apr. 11, 2013), plaintiff sought to admit evidence of prior litigation to

demonstrate that other individuals made the same allegations against the defendants in

prior suits. Defendants argued that the records and documents related to prior litigation

were both irrelevant and unduly prejudicial. Defendants also argued that the records

were forbidden propensity evidence, pursuant to Fed. R. Evid. 404. This Court held

> that the risk of unnecessary delay or confusion of the issues under Rule
> 403 substantially outweighs any slight probative value. *See Manuel v. City
> of Chicago*, 335 F.3d 592, 597 (7th Cir. 2003) (noting "potential for confusing
> or even misleading the jury by engaging in a series of mini-trials" by
> admitting evidence of prior allegations against defendant). The
> introduction of such evidence would consist of several mini-trials of the
> facts surrounding these other [ ] claims.

*Goldberg*, 2013 WL 1499043, at *2 (N.D. Ill. Apr. 11, 2013). The Court in *Goldberg* refused

to admit the evidence of prior litigation pursuant to FRE 404(b), because "the danger of

unfair prejudice and confusion of the issues because the allegations are 'exactly the

same' substantially outweighs any probative value of such evidence under Rule 403."

*Id.* The records of prior law suits should be barred pursuant to FRE 401, 402, and 403.

### Fourteenth Motion *in Limine* – Bar Experts from Testifying to Standard of Care Outside their Discipline

Under Illinois law, the standard of care relevant to a medical malpractice claim and

any claimed deviations thereof must be supported with expert testimony, from an

expert with the same class of licensure as the defendant. *Sullivan v. Edward Hosp.*, 209 Ill.

2d 100, 114–15 (2004). Only a licensed nurse can testify to the standard of care for

nursing. Only a licensed physician assistant can testify to the standard of care for a

physician assistant. *Clanton v. United States*, 2017 WL 2637795, at *13 (S.D. Ill. 2017);

*Sullivan v. Edward Hosp.,* 209 Ill. 2d 100, 114–15 (2004) ("the health-care expert witness must be a licensed member of the school of medicine about which the expert proposes to testify"); *Dolan v. Galluzzo*, 77 Ill. 2d 279, 283 (1979) ("The practitioner of a particular school of medicine is entitled to have his conduct tested by the standards of his school.).

The Seventh Circuit held that Illinois' requirements regarding the presentation of expert testimony to prove medical malpractice claims is a substantive rule and thus binding on this Court. *Ford-Sholebo v. United States*, 980 F. Supp. 2d 917, 980–81 (N.D. Ill. 2013); see also, *Johnson v. United States*, 65 F. Supp. 3d 595, 607 fn. 12 (N.D. Ill. 2014).

Plaintiff should be barred from introducing argument, testimony or evidence pertaining to the standards of care or deviations thereof unless first supported by expert testimony from an expert licensed in the same class of medicine that which they purport to testify regarding.

## Fifteenth Motion *in Limine* – Grief and Loss of Consortium

Pursuant to the Illinois Wrongful Death Act, which is adopted for purposes of Section 1983 damages, and which has also been brought as a separate claim in this case by the Plaintiff, Aaron Piercy, only the deceased's next of kin may recover damages in the instant case.

The Illinois Supreme Court has determined that next of kin, within the meaning of the Wrongful Death Act, is governed by the Illinois Probate Act of 1975 (755 ILCS 5/2-1(b)). *Morris v. William L. Dawson Nursing Ctr., Inc.,* 187 Ill. 2d 494, 498 (1999). As such,

the next of kin of a deceased adult with surviving children, siblings and parents, are the children. *See Morris,* 187 Ill. 2d at 498 (rejecting claim for damages of decedent's surviving siblings where there were surviving next of kin grandchildren); *Stephens v. Trinity Med. Ctr.,* 292 Ill. App. 3d 165, 169 (3rd Dist. 1997) (rejecting a surviving parent's claim for damages brought under the wrongful death act where there was a surviving spouse and child). *See also Pitzer v. City of E. Peoria, Ill.,* 597 F. Supp. 2d 806, 813 (C.D. Ill. 2009).

According to the plain language of the Wrongful Death Act, Dale Piercy's surviving siblings, parents, friends, and other relations cannot recover a benefit because they are not the decedent's next-of-kin. Only Aaron Piercy is entitled to recover under the Wrongful Death Act.

Plaintiff should be barred from introducing evidence or argument pertaining to grief, loss of consortium, loss of society or similar claimed injuries to family members other than Aaron Piercy. Any such claims by Shirley Piercy, Dan Piercy, or other family members should be excluded. Plaintiff should be barred from introducing any evidence or argument pertaining to any such claims.

### Sixteenth Motion *in Limine* – Supervision of Dan Williams

Plaintiff has argued that ACH failed to adequately supervise Dan Williams, resulting in the Plaintiff's injury. This court granted summary judgment with respect to claims that Dan Williams was not adequately supervised, finding that it bore no

relationship to the deliberate indifference claims raised in this case. Dkt. 379 at 29 ("Summary judgment is granted on the issue of ACH's failure to supervise Williams."). Plaintiff should therefore be prohibited from introducing any evidence or argument pertaining to an alleged failure to supervise Dan Williams.

## Seventeenth Motion *in Limine* – Protocols (Pl. Ex. 21)

Plaintiff has argued that the protocols pertaining to vomiting blood were confusing or misleading. The court disagreed and granted summary judgment with respect to that question. Dkt. 379 at 28 ("There is no inconsistency: officers are directed to call a physician if an inmate is vomiting blood, and both protocols direct them to the same assessment questions in Protocol 06-05.... the [ ] argument fails."). Plaintiff should be barred from introducing any evidence or making any argument that the protocols were unclear or misleading.

## Eighteenth Motion *in Limine* – Rebuttal Experts

Plaintiff disclosed several rebuttal experts. Plaintiff also disclosed rebuttal opinions from previously disclosed experts.

Plaintiff should be prohibited from calling rebuttal experts during his case in chief and should be prohibited from introducing rebuttal opinions during his case in chief even if such opinions are to be given by witnesses who were disclosed as primary experts.

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dept.*, 535

F.3d 621, 630 (7th Cir. 2008) (quoting *U.S. v. Grintjes,* 237 F.3d 876, 879 (7th Cir. 2001)). However, a party may not offer testimony under the guise of "rebuttal" only to provide additional support for his case in chief. *Peals,* 535 F.3d at 630.

Accordingly, Plaintiff's rebuttal witnesses should be barred from testifying during his case in chief. Likewise, Plaintiff should be barred from eliciting rebuttal opinions during his case in chief to avoid improper bolstering.

### Nineteenth Motion *in Limine* – Defendants' Financial Condition

Plaintiff conducted extensive discovery regarding the Defendants' financial condition in furtherance of his claims for punitive damages. This Court bifurcated the trial so that the issue of punitive damages will not be presented to the jury during the first proceeding.

As a result of bifurcation, Defendants ask this Court to bar all testimony and evidence of the Defendants' financial condition from being presented in the first proceeding. A defendant's financial condition is only relevant to a jury's determination of whether to award a plaintiff punitive damages and how much to award. *Kemezy v. Peters,* 79 F.3d 33, 35–37 (7th Cir. 1996).

As a result, evidence of the individual Defendants' financial conditions, as well as the financial condition of ACH, should be barred during the first phase of the trial. This prohibition should include arguments, opening statements, witness testimony and evidence suggesting the size, value and worth of ACH.

## Twentieth Motion *in Limine* – "Captain of the Ship"

Plaintiff cannot be permitted to refer to Williams or Warkins as "Captain of the Ship" or use any similar reference to assert or imply that Dan Williams or Julie Warkins should be held accountable for the actions of correctional officers or others involved in the provision of healthcare at the jail. This is a medical malpractice and civil rights action regarding the conduct of a physician assistant and nurse. A "captain of the ship" argument would be inconsistent with the requirement of personal involvement in civil rights claims and potentially confuse the jury regarding the applicable standards.

Whether a nurse or physician assistant under these circumstances may be held liable in tort for the conduct of others has been addressed in Illinois courts. Illinois rejected the position that a medical practitioner can be held simply by being the "captain of the ship." In *Foster v. Englewood Hospital Association*, 19 Ill. 3d App. 1055, 313 N.E.2d 255 (1974), the Appellate Court specifically rejected the application of the "captain of the ship" doctrine or broad respondeat superior in Illinois. Illinois courts rejected the application of respondeat superior liability to a physician for the conduct of individuals who are not the physician's employees. In *Graham v. St. Luke's Hospital*, 46 Ill. App. 2d 147, 196 N.E.2d 355 (1964), the court held that a physician was not liable for any negligence of a nurse or intern he did not employ.

Defendants anticipate that Plaintiff may argue that Defendants ACH, Warkins or Williams are liable for the torts committed by previously named defendants, Whiteside

County, Whiteside County employees, Stateville Correctional Center, Stateville employees, Wexford, or Wexford employees. There is no admissible evidence which would support such a finding. Defendants Warkins and Williams were employees of ACH, not Whiteside County, Stateville or Wexford. Likewise, ACH is an independent contractor for Whiteside County. ACH has no relationship whatsoever with Stateville or Wexford. Accordingly, Plaintiff should be precluded from presenting evidence, argument, instruction or implication that Defendants Warkins, Williams, or ACH were agents or employees of Whiteside County, Stateville Correctional Center or Wexford or that Defendants can or should be held liable for the tortious acts of third parties. Furthermore, the use of "captain of the ship" or similar analogies is potentially confusing and substantially more prejudicial than probative. Fed. R. Evid. 403.

### Twenty-first Motion *in Limine* – Hearsay Statements of Family

Plaintiff cannot be permitted to introduce hearsay statements made by Dale Piercy's family members, nor can Plaintiff be permitted to introduce hearsay statements made to Dale Piercy's family by others, such as other medical providers or correctional officers. Fed. R. Evid. 802; *Guski v. Raja*, 409 Ill.App.3d 686, 949 N.E.2d 695 (1st Dist. 2011) (testimony of wife and son regarding decedent's complaints of headaches were inadmissible hearsay). Such testimony is inadmissible hearsay and must be excluded pursuant to Fed. R. Evid. 802.

**Twenty-second Motion *in Limine* – Hearsay Statements of Piercy**

Plaintiff disclosed several inmate witnesses who testified at deposition regarding statements allegedly made by Dale Piercy. Plaintiff cannot be permitted to introduce hearsay statements purportedly made by Dale Piercy to correctional officers or other inmates. Such statements if introduced by Plaintiff are inadmissible hearsay. Fed. R. Evid. 802.

This includes statements purportedly made by Dale Piercy to other inmates at Whiteside County jail. It also includes statements allegedly made by Dale Piercy to Officer Willhite. All of those statements are inadmissible hearsay. Plaintiff cannot introduce such statements to establish, for example, that Dale Piercy was vomiting blood or that he was ill at Whiteside County Jail.

**Twenty-third Motion *in Limine* – ACH Work at Other Jails**

Plaintiff cannot be permitted to attribute any alleged conduct by ACH at other facilities to Warkins or Williams' work at that Whiteside County Jail. Such evidence would be irrelevant, unduly prejudicial, and improper propensity evidence (though it is not even evidence of their propensity, only others' propensity). Fed. R. Evid. 402, 403, 404.

**Twenty-fourth Motion *in Limine* – Personal Practice of Providers**

Plaintiff cannot introduce evidence pertaining to the personal practices of experts or other providers. Personal practices are not a standard of care and are therefore irrelevant to any issue in the case and unduly prejudicial, as they are likely to confuse

24

the jury as to the applicable standard. On the issue of whether the Defendant deviated from the standard of care, an expert's statement as to what he or she would have done in that situation is not relevant, because differences in opinions are consistent with conformity to the applicable standard of care. *Mazzone v. Holmes*, 197 Ill.App.3d 886 (1st Dist. 1990); citing *Walski v. Tiesenga*, 72 Ill.2d 249 (1978); see also, *Ayala v. Murad*, 367 Ill. App. 3d 591, 603 (1st Dist. 2006).

### Twenty-fifth Motion *in Limine* – Availability, Hours on Shift

Plaintiff should not be permitted to introduce evidence or argument regarding the number of hours that Williams, Warkins or other providers were on duty at Whiteside County Jail or elsewhere. Plaintiff should not be permitted to introduce evidence regarding the number of jails covered or hours worked by Dan Williams. Such evidence is irrelevant to whether Williams or Warkins acted improperly and is unduly prejudicial. Fed. R. Evid. 402, 403. This evidence is irrelevant to the claims against Williams and Warkins – deliberate indifference and medical negligence. The number of hours each provider worked has no bearing on whether the individual Defendants were deliberately indifferent to Dale Piercy's serious medical needs or whether their behavior fell below the standard of care. The allegations in Plaintiff's Fourth Amended Complaint make no reference to and do not allege that Dale Piercy's death or injuries would or could have been different if the Defendants had been on duty a greater or

fewer number of hours. For these reasons, Plaintiff's evidence, argument or implications should be barred, as they are irrelevant to the claims brought at trial.

### Twenty-sixth Motion *in Limine* – Compliance with Discovery

Plaintiff should not be permitted to introduce evidence or argument regarding whether or not any party complied with or refused to comply with any discovery request in this case. The parties engaged in extensive discovery in this matter, much of which was disputed. Such argument is irrelevant to the issues in the case and unduly prejudicial. Plaintiff's dissatisfaction with the discovery process is not an issue properly before a jury, as discovery is a pre-trial mechanism controlled by this Court. Any issues Plaintiff may have had with the discovery process have either been resolved by this Court or waived as a result of failing to timely raise the issue. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) ("District courts enjoy extremely broad discretion in controlling discovery"); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) ("In light of her lack of diligence in pursuing the perceived inadequacies in discovery, the district court did not abuse its discretion in denying Ms. Packman's motion to compel as untimely.").

Arguing or implying to the jury that Defendants failed to comply with discovery requests is therefore not only irrelevant but unduly prejudicial. Plaintiff has no evidence that Defendants committed a discovery violation, but making spurious accusations will deprive Defendants of a fair trial and force the parties to air discovery disputes before

the jury. Additionally, the jury will likely be confused as to the issues and possibly believe Plaintiff's unfounded accusations of spoliation or intentional withholding of evidence.

### Twenty-seventh Motion *in Limine* – Authoritative Literature

Plaintiff cannot introduce any evidence regarding authoritative literature. Testimony by any opinion witnesses regarding reliance on authoritative literature was not disclosed pursuant to Supreme Court Rule 213. Plaintiff cannot introduce Testimony by any opinion witness for Plaintiff consisting of reading from notes taken by the witness from medical literature, reading directly from any article, treatise, paper or other authoritative work, or any testimony regarding the content of any such document. *See Weekley v. Industrial Comm'n*, 245 Ill. App. 3d 863, 869, 615 N.E.2d 59,63 (2nd Dist. 1993); *Schuchman v. Stackable*, 198 Ill. App. 3d 209, 555 N.E.2d 1012, 1024-1025 (5th Dist. 1990). Any testimony by any opinion witness for Plaintiff referring to any authoritative work, treatise, article or paper as supporting, bolstering or agreeing with the opinions of that witness, as opposed to merely providing a conceptual or factual basis for those opinions, would also be improper.

### Twenty-eighth Motion *in Limine* – Argument or Inference of Negligence from Fact That a Death Occurred

Plaintiff cannot be permitted to argue or imply that the Defendants were negligent because Dale Piercy died. Plaintiff must establish through expert testimony that the Defendant deviated from the standard of care. Any argument, testimony or inference

that because the Plaintiff's decedent died, negligence must have occurred is improper. *Kemnitz v. Semrad*, 206 Ill. App.3d 668, 565 N.E.2d 1 (1ˢᵗ Dist. 1990).

### Twenty-ninth Motion *in Limine* – Autopsy X-rays and Photos

Plaintiff should not be permitted to introduce as evidence the autopsy photos or x-rays. The use of such photos, particularly the use of numerous photos or photos showing aspects of the body and autopsy are unduly prejudicial. Autopsy photographs they are not relevant to the issues against Defendants, would be unfairly prejudicial, and would confuse the jury in violation of Fed. R. Evid. 401, 402, and 403. The fact of Dale Piercy's death is not at issue. Photographs of a deceased Dale Piercy during the course of his autopsy are irrelevant to the case and should be excluded. See Fed. R. Evid. 401, 402.1 Even if relevant, however, the Court should exclude all photographs pursuant to Fed. R. Evid.403. In determining whether to exclude evidence pursuant to Fed. R. Evid.403, the district court must "weigh the need for and probative value of the evidence against potential harm that its admission might cause." *Mihailovich v. Laatsch*, 359 F.3d 892, 906 (7ᵗʰ Cir. 2004). Where the contents of photographs are not at issue, the Seventh Circuit believes "the only conceivable reason for placing them in evidence [i]s to inflame the jury[.]" *Gomez v. Ahitow*, 29 F.3d 1128, 1139–40 (7ᵗʰ Cir. 1994); see also *Scott v. City of Chicago*, 724 F. Supp. 2d 917, 926 (N.D. Ill. 2010) ("[N]othing but a diversion (and an overly prejudicial diversion at that) would appear to be created by

introduction of the [photographs at issue]—they make it neither more or less probable that the version by one side or the other is credible.").

In this case, the autopsy photographs show Dale Piercy's deceased body and internal organs. At most, the photographs of Piercy's internal organs show the existence of a gastrointestinal bleed, a fact that is not disputed. The dispute at issue – what caused the gastrointestinal bleed- is not apparent from the autopsy photos, rendering them irrelevant to the central issue in the case. Given their graphic nature, display of such images would be highly inflammatory and would jeopardize the Defendants' right to a fair trial, as the jury will base its decision on emotional grounds. The cause of Dale Piercy's death is disputed, but the autopsy photographs make the cause of his death no more or less probable. See Fed.R.Evid. 401, 402. For these reasons, the Court should bar the admission of the autopsy photographs.

### Thirtieth Motion *in Limine* – Records Subpoenaed from ACH Clients

Plaintiff sent subpoenas to approximately 250 counties where ACH had contracts to provide healthcare. The counties generally produced copies of contracts with ACH, marketing materials, and occasionally minutes of meetings approving or discussing the contracts. Plaintiff's exhibit list identifies "excerpts" from approximately 50 counties as exhibits. Plaintiff has not provided or identified for counsel the "excerpts" to be used. The purpose and relevance of these exhibits remain a mystery. Pl. Exs. 86-102, 107-109, 111-123, 125-149.

Obviously, contracts at other counties are irrelevant and prejudicial with respect to the claims against Dan Williams and Julie Warkins and should be excluded. Fed. R. Evid. 402, 403.

With respect to the claims against ACH, those materials were not even provided to their *Monell* expert, Dr. Evans, so he did not rely upon them with respect to his opinions. *See,* Evans dep. [366-29] at 154-155. The documents subpoenaed from various counties are irrelevant, unduly prejudicial, and contain extensive hearsay. Fed. R. Evid. 402, 403, 802. They are inadmissible and should be barred.

## Thirty-first Motion *in Limine* – Dr. Butler Records

Dr. Butler is not a party to this case and was not involved in Dale Piercy's care. Yet, Plaintiff identified as exhibits documents pertaining to an old conviction related to her father's taxes (Pl. Ex. 167-168) and documentation of instances of minor discipline (Pl. Ex. 169-174). These are irrelevant to any issue in the case, particularly to any issue with respect to the individual Defendants and unduly prejudicial. They should be excluded pursuant to Fed R. Evid. 402, 403, 404, 609.

## Thirty-second Motion *in Limine* – Insurance

Plaintiff cannot introduce evidence that the Defendants have insurance or are entitled to indemnity, as it is irrelevant and unduly prejudicial. It is inadmissible pursuant to Fed. R. Evid. 403 and 411.

WHEREFORE, Defendants, JULIE WARKINS, DAN WILLIAMS, and ADVANCED CORRECTIONAL HEALTHCARE, INC., respectfully pray that the Court enter an Order granting this motion, excluding the evidence set forth above, directing Plaintiff and his witnesses that they are not to attempt to introduce any such evidence or argument, and for such other and further relief as the Court deems just.

JULIE WARKINS, DAN WILLIAMS, and
ADVANCED CORRECTIONAL HEALTHCARE, INC.,
Defendants


By: _____ *s/Peter R. Jennetten*_____
Peter R. Jennetten
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO




Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
Christina E. Cullom (Illinois Bar No. 6305688)
ccullom@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL 61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on **August 30, 2017**, I electronically filed **DEFENDANTS'
MOTIONS *IN LIMINE*** with the Clerk of Court using the CM/ECF system, which will
send notification of such filing to the following:

Arthur Loevy                       **Attorneys for Plaintiff**
arthur@loevy.com
Michael Kanovitz
michael@loevy.com
Vincenzo Field
vince@loevy.com
Sarah Grady
sarah@loevy.com
Scott Rauscher
scott@loevy.com
Julia Rickert
julia@loevy.com
Loevy & Loevy
311 N. Aberdeen St.
3rd Floor
Chicago, IL 60607

Robert S. Tengesdal          **Attorneys for Julie Warkins and Dan Williams**
rtengesdal@bollingertrials.com
Harrison A. Cohen
hcohen@bollingertrials.com
Bollinger Connolly Krause, LLC
500 W. Madison St.
Suite 2430
Chicago, IL 60661

Ryan M. Henderson          **Local Counsel for Julie Warkins,**
rhenderson@batescarey.com     **Dan Williams, and Advanced Correctional**
BatesCarey LLP               **Healthcare, Inc.**
191 N. Wacker Dr.
Suite 2400
Chicago, IL 60606

_s/Peter R. Jennetten_
Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL  61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

4833-0200-0965, v. 4