IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AARON PIERCY, as Administrator of the Estate of Dale Piercy,<br><br>Plaintiff,<br><br>vs.<br><br>ADVANCED CORRECTIONAL HEALTHCARE, INC.,<br><br>Defendant. | Case No. 14-cv-7398 |

**MOTION FOR JUDGMENT AS A MATTER OF LAW**

NOW COMES the Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC., by its attorneys, QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO, and for its Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50, states:

## I. INTRODUCTION

Plaintiff failed to present evidence from which a jury could reasonably conclude (a) that Dan Williams or Julie Warkins were deliberately indifferent, such that Advanced Correctional Healthcare can be held liable under § 1983, (b) that ACH's policies caused the death of Dale Piercy 15 days after leaving the Whiteside County Jail, (c) that ACH failed to train its employees or correctional officers and that the failure to train caused Dale Piercy's death, and (d) that Julie Warkins or Dan Williams was professionally negligent.

## II. ARGUMENT

The Court may grant judgment as a matter of law if, after the close of Plaintiff's evidence, "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed.R.Civ.P. 50(a)(1).

### A. The jury could not find that ACH policies were the moving force behind a constitutional injury caused by Dan Williams or Julie Warkins.

Plaintiff failed to elicit any evidence that Dan Williams or Julie Warkins was deliberately indifferent. Absent a constitutional violation by Julie Warkins and Dan Williams, ACH cannot be held liable.

Deliberate indifference requires that the defendant have actual knowledge of the plaintiff's serious medical need. A "plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Since Dan Williams was never told of Dale Piercy's supposed complaints regarding vomiting blood, he cannot be deliberately indifferent for failing to respond to them. *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (summary judgment for nurse where he did not have actual knowledge); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766 (7th Cir. 2014) "[D]eliberate indifference requires a showing that the defendants had *actual* knowledge that Mr. Pittman was at risk of serious harm and *deliberately ignored* that risk." *Id.; see also, Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002).

Plaintiff failed to present evidence of proximate cause. Plaintiff's witnesses failed to testify that Julie Warkins' alleged deliberate indifference to Dale Piercy's serious medical need was the proximate cause of Dale Piercy's death. Nurse Speller testified that Julie Warkins' failure to document, assess or follow up with Dale Piercy was inappropriate and below the standard of care. She did not and could not testify to what medical care was provided or not provided to Piercy at Stateville, whether Warkins' alleged failures actually affected Dale Piercy's medical care at Stateville or whether it actually caused Dale Piercy's death. Her focus was on Piercy's time at the Whiteside County Jail, so she could not opine as to his cause of death at Stateville.

**B. The jury could not find that ACH's policies were the moving force behind Dale Piercy's death, 15 days after leaving Whiteside County Jail.**

An official capacity claim presumes an underlying constitutional violation. Absent a constitutional violation, ACH cannot be held liable under Section 1983. *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 527 (7th Cir. 2001). To establish liability against ACH, Plaintiff must show (1) that ACH maintained an unconstitutional custom or policy and (2) that the policy was a "moving force" behind the constitutional injury suffered by Plaintiff. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 780 (7th Cir. 2014). ACH policies or practices did not prevent Dan and Julie from providing appropriate care.

Dale Piercy entered the Whiteside County Jail with a self-reported history of acid reflux. He informed the correctional officer on intake that he took over the counter

3

Pepcid for that reflux. When Dale Piercy complained to Nurse Warkins that the food at the jail did not agree with him, she reported that to Dan Williams and he prescribed Omeprazole to Dale Piercy.

Plaintiff's gastrointestinal expert, Dr. Shapiro, testified that it was reasonable to give Omeprazole to Dale Piercy. He testified that the Omeprazole made Dale Piercy feel better. On cross-examination, Dr. Shapiro testified that Dale Piercy died of a gastrointestinal bleed, and he could not determine how long that bleed lasted. He testified that there was no indication of a gastrointestinal bleed upon Dale Piercy's intake at Stateville. What's missing from Dr. Shapiro's testimony is a causal link between the actions of Julie Warkins or Dan Williams and Dale Piercy's death. Dr. Shapiro testified that he could not say that Omeprazole masked Dale Piercy's condition at DOC.

Dr. Evans, Plaintiff's *Monell* expert testified at length regarding his opinions about the care provided to inmates by ACH. However, Dr. Evans stopped short of providing testimony that ACH policies were the moving force behind Dale Piercy's death. Dr. Evans testified that the care at Whiteside County Jail provided by ACH "set the stage for poor care at IDOC," but did not testify that it caused Dale Piercy's death. Nor did he testify that the substandard care Piercy received at Stateville was a result of the alleged deficiencies in care at Whiteside County. He did not testify at all as to what caused Dale Piercy's death or what treatment Piercy would have been provided at Stateville had he

4

been provided allegedly adequate care at Whiteside. He would not have been able to, because he did not thoroughly review the records from Stateville. His opinions were focused on the care Piercy received at Whiteside County.

Plaintiff failed to present evidence of proximate cause, linking his claims of inadequate care at Whiteside County to Dale Piercy's death at Stateville two weeks later. Moreover, the care at Stateville was so deplorably deficient that it breaks any causal connection between what may have happened at Whiteside County and Dale Piercy's death at Stateville. The deficient care at Stateville is an intervening event that breaks the causal chain.

### C. The jury could not find that ACH failed to train its employees or the employees of Whiteside County.

The alleged failure to train correctional staff is insufficient to support a *Monell* claim. First, Plaintiff did not allege this claim in the Fourth Amended Complaint, which alleged only that ACH failed to train the medical staff. Fourth Amended Complaint at ¶¶53 (referencing "a widespread practice… under which medical personnel employed by ACH…") and 54 ("failing to adequately train and supervise medical personnel"). The claim is therefore waived. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012)

Second, training and supervision of correctional officers is the responsibility of the Sheriff, not Advanced Correctional Healthcare. "The failure to provide adequate training to its employees may be a basis for imposing liability on a municipality or private corporation." *Rice ex rel. Rice v. Corr. Med. Services*, 675 F.3d 650, 675 (7th Cir.

5

2012) (emphasis added, rejecting failure to train claim); *Woodward v. Corr. Med. Services of Illinois, Inc.*, 368 F.3d 917, 928–29 (7th Cir. 2004) ("connection between inadequate CMS policies—not training <u>its employees</u> properly… and Farver's death").

Finally, plaintiff failed to elicit any testimony critical of ACH's training or even that the training was the proximate cause of Dale Piercy's mistreatment or death. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (failure to train on *Brady* did not support *Monell* claim). The "identified deficiency in a city's training program must be closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).

Plaintiff elicited testimony from witnesses that vomiting blood is a serious condition and each witness testified that vomiting blood (actual vomit, as opposed to the appearance of it from your nose or elsewhere) would require immediate medical attention. Plaintiff elicited no testimony as to what was inadequate about the training done by ACH, what additional training would be required or how the training done by ACH proximately caused Dale Piercy's death.

### D. The jury could not find ACH vicariously liable for professional negligence.

#### 1. The jury could not find Dan Williams was professionally negligent.

Dan Williams was not advised of any complaints of vomiting blood or similar complaints. Not a single witness has testified to anything different. The only

6

information relayed to him by Julie Warkins was a complaint that the jail food "did not agree with him," a normal set of vital signs, and a request for over-the-counter antacids. Given that information, his prescription for Omeprazole met the standard of care. Plaintiff's gastroenterologist expert, Dr. Shapiro agreed, testifying that giving Dale Piercy Omeprazole was reasonable and that it made him feel better. Plaintiff's physician's assistant expert, Janet Furman PA-C testified that if Dan Williams was not informed that Dale Piercy was vomiting blood, he met the standard of care.

Additionally, Plaintiff failed to elicit any testimony establishing a causal link between Dan Williams' actions and Dale Piercy's death. The plaintiff must show through expert testimony that it was probably more true than not that the negligence complained of was a proximate cause of the injury. *Borowski v. Von Solbrig,* 60 Ill.2d 418 (1975). Proximate cause in a medical malpractice case must be established by expert testimony *to a reasonable degree of medical certainty. Sunsis v. Radfar,* 317 Ill.App.3d 817 (1st Dist. 2000) (emphasis added). The causal connection must not be contingent, *speculative* or merely possible. *Saxton v. Toole,* 240 Ill.App.3d 204, 210 (1992) (emphasis added). If the plaintiff fails to create a proximate cause fact issue for the jury to consider, no *prima facie* case is made and a directed verdict against the plaintiff is proper. *Wojtowicz v. Cervantes,* 248 Ill.App.3d 524, 532 (1996).

Even if Dan Williams would have asked more questions and ordered a referral to a gastroenterologist while Dale Piercy was at Whiteside County, Dr. Shapiro testified that

he could not say that Omeprazole masked Dale Piercy's condition for the providers at Stateville or that Dale Piercy even had his fatal gastrointestinal bleed when he entered Stateville. Plaintiff elicited no testimony to suggest that had Dale Piercy been referred out to a gastroenterologist, anything would have been found or the medical care he received would have been different. As Dr. Shapiro said, "everything is speculation."

Plaintiff's claim fails threefold as to Dan Williams: he cannot prove that Dan Williams was put on notice of vomiting blood, that his actions were unreasonable given what he did know, or that his actions were the cause of Dale Piercy's death.

### 2. The jury could not find Julie Warkins was professionally negligent.

To prevail in a medical negligence case, a plaintiff must establish (1) the proper standard of care against which a nurse's conduct is measured, (2) a negligent failure to comply with the applicable standard of care, and (3) a resulting injury proximately caused by the nurse's lack of skill or care. *Sullivan v. Edward Hosp.*, 209 Ill.2d 100 (2004) (identifying elements of "a negligence medical malpractice case"). The plaintiff bears the burden of proving all three elements through the testimony of medical experts. *Wilbourn v. Cavalenes*, 398 Ill.App.3d 837 (1st Dist.2010); *Bergman v. Kelsey*, 375 Ill.App.3d 612 (1st Dist.2007) ("A plaintiff must generally prove the elements of a medical negligence cause of action through medical expert testimony.").

Plaintiff's nursing expert, Nurse Speller, testified that Julie Warkins' failure to adequately document her interaction and assessment of Dale Piercy fell below the

8

standard of care. She also testified that adequate documentation is generally important to continuity of care and patient safety. But she stopped there.

Plaintiff's case of medical negligence against Julie Warkins is devoid of evidence of proximate cause. No one testified that Julie Warkins failure to document caused Dale Piercy's death. No one testified that Stateville would have treated Dale Piercy any differently if Stateville would have known that Piercy was given Omeprazole. No one testified that Stateville relied on the documentation sent with Piercy to Stateville to treat Dale Piercy.

Each one of Plaintiff's witnesses who testified regarding the importance of documentation stopped short of providing a causation opinion; merely stating that the documentation was important for a patient's health and safety. Nurse Speller did not look at any records from Stateville and "was unable to comment" regarding follow-up care Dale Piercy did or did not receive. She cannot possibly render an opinion regarding causation because (a) she is not a doctor and (b) she did not review the records covering the last 15 days of his life. She offered absolutely no causation opinions regarding Dale Piercy's death. Without causation opinions, Plaintiff's claim of medical negligence against Nurse Warkins fails.

Plaintiff offered no nursing standard of care experts in their initial expert disclosures. Under Illinois law, Plaintiff is required to present expert testimony to establish the standard of care for such a claim. Only a nurse can testify to the standard

of care for nursing. *Sullivan v. Edward Hospital*, 209 Ill.2d 100, 806 N.E.2d 645 (2004) (expert must have same class of license as defendant, doctor cannot testify to standard of care for nurse). Nurse Speller's opinions were therefore not properly before the jury in Plaintiff's case-in-chief. Without Nurse Speller's opinions, Plaintiff's claim of medical negligence against Julie Warkins necessarily fails.

WHEREFORE, the Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC., respectfully prays that the Court enter an Order granting judgment in its favor and against the Plaintiff, that it have its costs, and for such other and further relief as the Court deems proper.

ADVANCED CORRECTIONAL HEALTHCARE, INC.,
Defendant


By: _____*s/Christina E. Cullom*_____
        Christina E. Cullom
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO

Peter R. Jennetten (Illinois Bar No. 6237377)
pjennetten@quinnjohnston.com
Christina E. Cullom (Illinois Bar No. 6305688)
ccullom@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL 61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

# CERTIFICATE OF SERVICE

I hereby certify that on **September 28, 2017**, I electronically filed this **MOTION FOR JUDGMENT AS A MATTER OF LAW** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Arthur Loevy<br>arthur@loevy.com<br>Michael Kanovitz<br>michael@loevy.com<br>Vincenzo Field<br>vince@loevy.com<br>Sarah Grady<br>sarah@loevy.com<br>Scott Rauscher<br>scott@loevy.com<br>Julia Rickert<br>julia@loevy.com<br>Loevy & Loevy<br>311 N. Aberdeen St.<br>3rd Floor<br>Chicago, IL  60607 | **Attorneys for Plaintiff** |
| Robert S. Tengesdal<br>rtengesdal@bollingertrials.com<br>Harrison A. Cohen<br>hcohen@bollingertrials.com<br>Bollinger Connolly Krause, LLC<br>500 W. Madison St.<br>Suite 2430<br>Chicago, IL  60661 | **Attorneys for Julie Warkins and Dan Williams** |
| Stephen J. Gorski<br>sgorski@cassiday.com<br>Cassiday Schade LLP<br>120 W. State St.<br>Suite 401<br>Rockford, IL  61101 | **Attorneys for Advanced Correctional Healthcare** |

| | |
|---|---|
| Joseph N. Rupcich<br>jrupcich@cassiday.com<br>Cassiday Schade LLP<br>111 N. 6th St.<br>Suite 200<br>Springfield, IL  62701 | **Attorneys for Advanced Correctional Healthcare** |
| Ryan M. Henderson<br>rhenderson@batescarey.com<br>BatesCarey LLP<br>191 N. Wacker Dr.<br>Suite 2400<br>Chicago, IL  60606 | **Local Counsel for Julie Warkins, Dan Williams, and Advanced Correctional Healthcare, Inc.** |

*s/Christina E. Cullom*
Christina E. Cullom (Illinois Bar No. 6305688)
ccullom@quinnjohnston.com
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Ave.
Peoria, IL  61602-1211
(309) 674-1133 (phone)
(309) 674-6503 (fax)

4823-7957-0769, v. 1